# 13-2364-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

NORBERT G. KAESS, on behalf of themselves and all others similarly situated, BELMONT HOLDINGS CORP., MARIA FARRUGGIO, on behalf of themselves and all others similarly situated, EDWARD P. ZEMPRELLI, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellants,*

SHIRLEY BACHRACH, Individually and on behalf of all others similarly situated, GEORGE GERSON, Individually and on behalf of all others similarly situated, RIDGE OAK MANAGEMENT, INC., On behalf of itself and all others similarly situated,

*Plaintiffs,*

—against—

(*caption continued on inside cover*)

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEES THE DEUTSCHE BANK DEFENDANTS AND THE INDIVIDUAL DEFENDANTS

*Of Counsel*

CHARLES A. GILMAN
DAVID G. JANUSZEWSKI
BRIAN BARRETT
MINH-VAN DO

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for the Deutsche Bank Defendants and the Individual Defendants*

DEUTSCHE BANK AG, DEUTSCHE BANK CAPITAL FUNDING TRUST VIII, DEUTSCHE BANK CAPITAL FUNDING LLC VIII, DEUTSCHE BANK CAPITAL FUNDING TRUST X, DEUTSCHE BANK CAPITAL FUNDING LLC X, JOSEF ACKERMAN, ANTHONY DI IORIO, BANZIGER HUGO, TESSEN VON HEYDEBRECK, HERMANN-JOSEF LAMBERTI, MARTIN EDELMANN, PETE STURZINGER, DETLEF BINDERT, JONATHAN BLAKE, MARCO ZIMMERMANN, UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, WACHOVIA CAPITAL MARKETS, LLC, MORGAN STANLEY & CO. INCORPORATED, DEUTSCHE BANK SECURITIES INC., BANC OF AMERICA SECURITIES LLC, DEUTSCHE BANK CONTINGENT CAPITAL TRUST III, DEUTSCHE BANK CONTINGENT CAPITAL TRUST V, DEUTSCHE BANK CONTINGENT CAPITAL FUNDING LLC IX, DEUTSCHE BANK D CAPITAL FUNDING LLC IX, RAINER RAULEDER, DEUTSCHE BANK CONTINGENT CAPITAL TRUST III, DEUTSCHE BANK CONTINGENT CAPITAL LLC III, KPMG DEUTSCHE TREUHAND-GESELLSCHAFT, KPMG INTERNATIONAL, DEUTSCHE BANK CONTINGENT CAPITAL TRUST II, DEUTSCHE BANK CONTINGENT CAPITAL LLC II,

*Defendants-Appellees.*

# FRAP 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees Deutsche Bank AG, Deutsche Bank Securities Inc., Deutsche Bank Capital Funding Trust VIII, Deutsche Bank Capital Funding LLC VIII, Deutsche Bank Contingent Capital Trust II, Deutsche Bank Contingent Capital LLC II, Deutsche Bank Capital Funding Trust IX, Deutsche Bank Capital Funding LLC IX, Deutsche Bank Capital Funding Trust X, Deutsche Bank Capital Funding LLC X, Deutsche Bank Contingent Capital Trust III, Deutsche Bank Contingent Capital LLC III, Deutsche Bank Contingent Capital Trust V, and Deutsche Bank Contingent Capital LLC V state the following:

1.      Deutsche Bank Capital Funding Trust VIII, Deutsche Bank Capital Funding LLC VIII, Deutsche Bank Contingent Capital Trust II, Deutsche Bank Contingent Capital LLC II, Deutsche Bank Capital Funding Trust IX, Deutsche Bank Capital Funding LLC IX, Deutsche Bank Capital Funding Trust X, Deutsche Bank Capital Funding LLC X, Deutsche Bank Contingent Capital Trust III, Deutsche Bank Contingent Capital LLC III, Deutsche Bank Contingent Capital Trust V, and Deutsche Bank Contingent Capital LLC V are all wholly-owned subsidiaries of Deutsche Bank AG.

2.      Deutsche Bank Securities Inc. is a wholly-owned subsidiary of DB U.S. Financial Markets Holding Corporation, which in turn is a wholly-owned sub-

sidiary of the Taunus Corporation, which in turn is a wholly-owned subsidiary of Deutsche Bank AG.

3.    Deutsche Bank AG is a publicly traded corporation.  Deutsche Bank AG has no parent corporation, and no publicly traded corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

PRELIMINARY STATEMENT ..........................................................1

CHRONOLOGY OF PROCEEDINGS BELOW ....................................4

STATEMENT OF ISSUES ...............................................................7

COUNTER-STATEMENT OF FACTS ................................................8

SUMMARY OF ARGUMENT ..........................................................17

STANDARDS OF REVIEW .............................................................22

ARGUMENT .................................................................................24

I.     PLAINTIFFS FAILED TO STATE A CLAIM FOR VIOLATION OF ITEM 503 AND "VARIOUS ACCOUNTING PRINCIPLES" .................24

     A.    The District Court Correctly Held that Plaintiffs' Disclosure-Based Claims Were Matters of Subjective Opinion and that Plaintiffs Failed to Plead Subjective Falsity. ......................................24

     B.    Deutsche Bank Adequately Informed the Market of its Exposure to Mortgage-Related Debt...................................................32

II.    STATEMENTS AS TO "VALUE-AT-RISK" ARE SUBJECTIVE OPINIONS; FAIT APPLIES; PLAINTIFFS FAILED TO PLEAD SUBJECTIVE FALSITY ............................................................35

III.   PLAINTIFFS ARE NOT ENTITLED TO A DO-OVER ...........................39

     A.    The District Court Correctly Dismissed Plaintiffs' Claims with Prejudice in the August 10, 2012 Opinion....................................39

     B.    The District Court Correctly Denied Plaintiffs' Motion for Reconsideration, Rendering Their Request for Leave to Amend Moot.................................................................43

CONCLUSION ...............................................................................47

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*AmBase Corp.* v. *City Investing Co. Liquidating Trust*,
326 F.3d 63 (2d Cir. 2003) ................................................................22

*In re American Int'l Group, Inc., 2008 Sec. Litig.*,
2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013) ...............................25n, 26, 28, 41

*Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012) .........................................................22, 44n

*Baker* v. *Dorfman*,
239 F.3d 415 (2d Cir. 2000) ............................................................23

*Bayerische Landesbank* v. *Aladdin Cap. Mgmt LLC*,
692 F.3d 42 (2d Cir. 2012) ............................................................18n

*In re Bear Stearns Companies, Inc. Sec., Deriv. and ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011) ..................................................37n

*Bellikoff* v. *Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007) ...........................................................44n

*Belmont Holdings Corp.* v. *Sun Trust Banks, Inc.*,
2010 WL 3545389 (N.D.Ga. Sept. 10, 2010) ..........................................7n

*Bloomberg L.P.* v. *Commodity Futures Trading Comm'n*,
949 F. Supp. 2d 91 (D.D.C. 2013) .....................................................36

*Calvary Christian Center* v. *City of Fredericksburg, Virginia*,
710 F.3d 536 (4th Cir. 2013) ..........................................................43n

*Cantor Fitzgerald Inc.* v. *Lutnick*,
313 F.3d 704 (2d Cir. 2002) ............................................................22

*City of Omaha Civilian Emps. Ret. Sys.* v. *CBS Corp.*,
679 F.3d 64 (2d Cir. 2012) ........................................................21n, 28

iv

*Denny* v. *Barber*,
　　576 F.2d 465 (2d Cir. 1978) ................................................................18

*Devlin* v. *Transp. Comm. Intern. Union*,
　　175 F.3d 121 (2d Cir. 1999) ...............................................................23

*Duncan* v. *Jaudon*,
　　82 U.S. 165 (1872)...............................................................................35

*Empresa Cubana del Tabaco v. Culbro Corp.*,
　　541 F.3d 476 (2d Cir. 2008) ...............................................................23

*Fait* v. *Regions Financial Corp.*,
　　655 F.3d 105 (2d Cir. 2011) ......................................................*passim*

*Fait* v. *Regions Financial Corp.*,
　　712 F. Supp. 2d 117 (S.D.N.Y. 2010), *aff'd*, 655 F.3d 105 (2d Cir. 2011) .5n, 41

*Farrar* v. *Churchill*,
　　135 U.S. 609 (1890)...............................................................................35

*Foman* v. *Davis*,
　　371 U.S. 178 (1962)............................................................................40n

*The Freeman Group et al.* v. *The Royal Bank of Scotland Group PLC*,
　　540 Fed. App'x 33 (2d Cir. 2013) ............................................. *passim*

*Freidus et al.* v. *ING Groep, N.V.*,
　　--- Fed. App'x ----, 2013 WL 6150769 (2d Cir. Nov. 22, 2013)...............*passim*

*Freidus* v. *Barclays Bank PLC*,
　　734 F.3d 132 (2d Cir. 2013) ..................................................18, 21n, 39, 42, 46n

*Fulton County Employees Retirement Sys.* v. *MGIC Inv. Corp.*,
　　675 F.3d 1047 (7th Cir. 2012) ...................................................16, 31

*Gallop* v. *Cheney*,
　　642 F.3d 364 (2d Cir. 2011) ...............................................................41

*Ganino* v. *Citizens Util. Co.*,
　　228 F.3d 154 (2d Cir. 2000) ...............................................................28

v

*In re General Electric Co. Sec. Litig.*,
2012 WL 2892376 (S.D.N.Y. July 12, 2012) ...................................................44n

*Horras* v. *Am. Capital Strategies, Ltd.*,
729 F.3d 798 (8th Cir. 2013) .................................................................43

*IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*,
2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .........................................3n, 7, 7n

*Indiana State District Council of Laborers & HOD Carriers Pension & Welfare Fund* v. *Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013), *cert. granted*,
--- S. Ct. ---, 2014 WL 801097 (Mar. 3, 2014)..................................20n

*James* v. *Watt*,
716 F.2d 71 (1st Cir. 1983) .................................................................22

*Janese* v. *Fay*,
692 F.3d 221 (2d Cir. 2012) .........................................................23, 45

*Johnson* v. *Univ. of Rochester Med. Center*,
642 F.3d 121 (2d Cir. 2011) .................................................................23

*Kleinman* v. *Elan Corp., PLC*,
706 F.3d 145 (2d Cir. 2013) .................................................................21n

*Kotlicky* v. *United States Fidelity & Guaranty Co.*,
817 F.2d 6 (2d Cir. 1987) .................................................................21n

*In re Lehman Bros. Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) ..............................................25n, 27, 39n

*Leisure Caviar, LLC* v. *U.S. Fish & Wildlife Serv.*,
616 F.3d 612 (6th Cir. 2010) .................................................................44

*Lighthouse Financial Group* v. *Royal Bank of Scotland Group, PLC*,
902 F. Supp. 2d 329 (S.D.N.Y. 2012) ..............................................25n, 26n

*Litwin* v. *The Blackstone Group, L.P.*,
634 F.3d 706 (2d Cir), *cert. denied*, 132 S. Ct. 242 (2011)............ 4n, 29n, 29-31

*In re Locust Bldg. Co.*,
299 F. 756 (2d Cir. 1924) .................................................................35

*National Petrochemical Co. of Iran* v. *M/T Stolt Sheaf*,
  930 F.2d 240 (2d Cir. 1991) ............................................................ 23-24, 43, 45

*NECA-IBEW Pension Trust Fund* v. *Bank of America Corp.*,
  2013 WL 620257 (S.D.N.Y. Feb. 15, 2013) ...................................................38

*NECA–IBEW Pension Trust Fund v. Bank of America Corp.*,
  2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012) ...................................................26n

*Novak* v. *Kasaks,*
  216 F.3d 300 (2d Cir. 2000) ............................................................................27

*Oklahoma Firefighters Pension & Retirement System* v. *Student Loan Corporation*,
  951 F. Supp. 2d 479 (S.D.N.Y. 2013) ............................................................28n

*Olkey* v. *Hyperion 1999 Term Trust Inc.*,
  98 F.3d 2 (2d Cir. 1996) ..................................................................................32

*In re OSG Sec. Litig.*,
  2013 WL 4885890 (S.D.N.Y. Sept. 10, 2013) ..................................................7n

*Panther Partners, Inc.* v. *Ikanos Commun's, Inc.*,
  681 F.3d 114 (2d Cir. 2012) ....................................................... 29n, 29-31, 30n

*Plumbers & Steamfitters Local 773 Pen. Fund* v. *Canadian Imp. Bank of Com.*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) ............................................28-29, 36-38

*In re ProShares Trust Sec.*,
  728 F.3d 96 (2d Cir. 2013) ..............................................................................32

*In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litig.*,
  2008 WL 4962985 (S.D.N.Y. Nov. 20, 2008), *aff'd sub nom. Capital Mgmt.
  Select Fund Ltd.* v. *Bennett*, 680 F.3d 214 (2d Cir. 2012)................................44n

*Rombach* v. *Chang*,
  355 F.3d 164 (2d Cir. 2004) .............................................................................4n

*In re Royal Bank of Scotland Group PLC Sec. Litig.*,
  2012 WL 3826261 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 540 Fed. App'x 33 (2d Cir.
  2013) ......................................................................................................... 32-33

*Rubke* v. *Capitol Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ................................................................. 19-20, 43

*Ruotolo* v. *City of New York*,
    514 F.3d 184 (2d Cir. 2008) ........................................................................23, 43

*In re Salomon Analyst AT&T Litig.*,
    350 F. Supp. 2d 455 (S.D.N.Y. 2004) ................................................................42

*In re Salomon Analyst Level 3 Litig.*,
    373 F. Supp. 2d 248 (S.D.N.Y. 2005) ................................................................37

*Sequa Corp.* v. *GBJ Corp.*,
    156 F.3d 136 (2d Cir. 1998) ..........................................................................44n

*Shalala* v. *Guernsey Memorial Hospital*,
    514 U.S. 87 (1995)..........................................................................................28n

*Silverstrand Investments* v. *AMAG Pharmaceuticals, Inc.*,
    707 F.3d 95 (1st Cir.), *cert. denied*, 134 S. Ct. 174 (2013).... 27, 29n, 29-31, 30n

*Slater* v. *A.G. Edwards & Sons, Inc.*,
    719 F.3d 1190 (10th Cir. 2013) .........................................................................33

*Stallo* v. *Wagner*,
    233 F. 379 (2d Cir. 1916) .................................................................................35

*Starr* v. *Peck*,
    1 Hill 270 (N.Y. 1841).....................................................................................35

*State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990) ........................................................................23, 44

*Thor Power Tool Co.* v. *Commissioner*,
    439 U.S. 522 (1979).........................................................................................28

*The Tool Box, Inc. v. Ogden City Corp.*,
    419 F.3d 1084 (10th Cir. 2005) .......................................................................43n

*Union Switch & Signal Co.* v. *Day*,
    16 F.2d 4 (2d Cir. 1926) ...................................................................................35

*United States* v. *Int'l Brotherhood of Teamsters*,
  247 F.3d 370 (2d Cir. 2001) ...........................................................................21n

*United States* v. *Lauersen*,
  648 F.3d 115 (2d Cir. 2011) ...........................................................................30n

*United States ex rel Ge* v. *Takeda Pharmaceutical Co.Ltd.*,
  737 F.3d 116 (1st Cir. 2013) ..........................................................................43n

*Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Board*,
  956 F.2d 1245 (2d Cir. 1992) ...........................................................................44

*Virginia Bankshares* v. *Sandberg*,
  501 U.S. 1083 (1991)...........................................................................7n, 19, 19n

*Williams* v. *Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2012) .................................................................. 21-24, 45

## REGULATIONS

17 C.F.R. § 229.303 (Item 303) .........................................................................30n

17 C.F.R. § 229.503(c) (Item 503) ...................................................................24, 26

## RULES

Fed. R. Civ. P. 9(b) .........................................................................................4n, 44n

Fed. R. Civ. P. 12(b)(6)........................................................................................22

Fed. R. Civ. P. 15 ........................................................................................*passim*

Fed. R. Civ. P. 59(e)....................................................................................*passim*

Fed. R. Civ. P. 60(b) ...................................................................................*passim*

## STATUTES

Securities Act of 1933
  § 11, 15 U.S.C. 77k....................................................................................*passim*

## ACCOUNTING PRINCIPLES

AICPA Statement of Position 94-6 ........................................................29n

International Accounting Standards 30 ...................................................29n

International Financial Reporting Standards 7 .....................................29n

Statement of Financial Accounting Standards No. 5 .............................29n

**SEC RELEASES**

*Management's Discussion and Analysis of Financial Condition and Results of Operations,* Sec. Act Rel. No. 6835,
43 SEC Docket 1330, 1989 WL 1092885 (May 18, 1989) .............................30n

Questions and Answers About the New "Market Risk" Disclosure Rules, SEC.gov
(July 31, 1997) .....................................................................................36

**OTHER AUTHORITIES**

2 *Bromberg & Lowenfels on Securities Fraud* § 5:277 (2d ed. 2013) ...................26

*Hearing before the H. Comm. of Gov't Oversight and Reform*, 110th Cong. 2 (2008) (statement of Dr. Alan Greenspan, former Chairman of the Fed. Reserve. Bd.), *available at* http://clipsandcomment.com/wp-content/uploads/2008/10/greenspan-testimony-20081023.pdf ........................16n

*Hearing on the Nomination of the Hon. Ben S. Bernanke Before the Sen. Comm. on Banking, Housing and Urban Affairs*, 11th Cong. 1 (2009), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-111shrg54239/html/CHRG-111shrg54239.htm .......................................................................................16n

*Interactive Summary: The Fed's Actions in 2008: What the Transcripts Reveal*, N.Y. Times, Feb. 21, 2014 .................................................................................17

Linda L. Griggs *et al.*, *The SEC's Renewed Interest in Accounting Cases – A New Beginning or a Victim of Fait?*, 45 Sec. Reg. & L. Rep. 1663 (2013) .............25n

Nathan Vardi, *The Prominent Philadelphia Businessman Working With Plaintiffs Lawyers Against Big Banks,* Forbes, Nov. 15, 2010 ..........................................1n

Paul Dutka, *Defending 1933 Act Claims: Rewriting the Playbook After Fait v. Regions Fin. Corp.*, 45 Sec. Reg. & L. Rep. 1531 (2013)....................................25n

Samuel P. Gunther and Michael Y. Scudder, *Facts v. Opinions: The Securities Laws and Accounting Estimates After Fait v. Regions Financial Corp.*, 45 Sec. Reg. & L. Rep. 62 (2013) ..................................................................29n

*Suggestions for Regulation of Hedge Funds Following the Financial Crisis of 2008 Before the H. Comm. on Oversight and Gov't Reform* (2008) (statement of Prof. David S. Ruder), *available at* http://oversight-archive.waxman.house.gov/documents/20081113101847.pdf........................16n

*Testimony by Robert E. Rubin before the Financial Crisis Inquiry Commission* (2010), *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0408-Rubin.pdf) ..................................................................16n

Tsakumis, Campbell & Doupnik, *IFRS: Beyond the Standards,* Journal of Accountancy (Feb. 2009), *available at* http://www.journalofaccountancy.com/issues/2009/feb/ifrsbeyondthestandards ...........................................................28n

U.S.  Treasury Secretary Henry Paulson, Speech before The Committee of 100 (Apr. 20, 2007), *available at* http://www.committee100.org/podcast/ ..............31

Defendants-Appellees Deutsche Bank[1] and the Individual[2] Defendants submit this memorandum of law in opposition to Plaintiffs-Appellants' appeal from the United States District Court for the Southern District of New York.

## PRELIMINARY STATEMENT

This action is one of a number of purported securities class actions that Plaintiffs Belmont Holdings Corp. and Edward P. Zemprelli have filed against large banks in the wake of the financial crisis.[3]  In each, Plaintiffs challenge the failure to accurately assess exposure to mortgage-backed securities, the failure to

---

[1] The Deutsche Bank Defendants are: Deutsche Bank AG, Deutsche Bank Capital Funding Trust VIII, Deutsche Bank Capital Funding LLC VIII, Deutsche Bank Capital Funding Trust IX, Deutsche Bank Capital Funding LLC IX, Deutsche Bank Capital Funding Trust X, Deutsche Bank Capital Funding LLC X, Deutsche Bank Contingent Capital Trust II, Deutsche Bank Contingent Capital LLC II, Deutsche Bank Contingent Capital Trust III, Deutsche Bank Contingent Capital LLC III, Deutsche Bank Contingent Capital Trust V, Deutsche Bank Contingent Capital LLC V and Deutsche Bank Securities Inc.

[2] The Individual Defendants are: Josef Ackermann, Hugo Banziger, Detlef Bindert, Jonathan Blake, Anthony Di Iorio, Martin Edelmann, Tessen von Heydebreck, Hermann-Josef Lamberti, Rainer Rauderpaulson, Peter Sturzinger and Marco Zimmermann.  Plaintiffs do not appeal from the dismissal of their claims relating to the October 2006 Offering. *See* n.6, *infra*. Because Plaintiffs only alleged basis for claims against Deutsche Bank Capital Funding Trust VIII, Deutsche Bank Capital Funding LLC VIII and Detlef Bindert was based on the October 2006 Offering, the judgment in those defendants' favor is not challenged on this appeal.

[3] *See* Nathan Vardi, *The Prominent Philadelphia Businessman Working With Plaintiff Lawyers Against Big Banks*, Forbes, Nov. 15, 2010 ("A company connected to Raymond Perelman, the prominent Philadelphia businessman and father of billionaire Ronald Perelman, has become an important ally of the powerful plaintiff lawyers who are trying to make money suing big banks in litigation related to the credit crisis.  Perelman's Belmont Holdings has tried to become the lead plaintiff four times in the last two or so years in securities class-actions filed against big banks like Deutsche Bank, Lehman Brothers, SunTrust Banks, ING Group, Citigroup, Morgan Stanley, Wachovia and others.  Belmont has succeeded in being appointed a lead plaintiff three times, securing the coveted lead or co-lead counsel position in those cases for the San Diego law firm of Robbins Geller Rudman & Dowd.").  Edward P. Zemprelli is an 88-year-old Pennsylvania lawyer. *See* http://en.wikipedia.org/wiki/Edward_Zemprelli.

1

accurately assess the efficacy of internal risk management controls and the failure to accurately estimate value-at-risk.  These are matters of *opinion*.

The Court has already summarily affirmed the dismissal of two of these actions, brought by the same counsel, for reasons directly applicable to this appeal. *See Freidus et al. (including Belmont Holdings and Edward P. Zemprelli)* v. *ING Groep, N.V.*, --- Fed. App'x ----, 2013 WL 6150769, at *1 (2d Cir. Nov. 22, 2013) ("*ING*") ("It is sufficient for our purposes to affirm the district court's determination that this statement [regarding the quality of RMBS assets] was one of opinion. Liability for opinions under the Securities Act will lie 'only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed.'" (citation omitted)), and *The Freeman Group et al. (including Edward P. Zemprelli)* v. *The Royal Bank of Scotland Group PLC*, 540 Fed. App'x 33, 37 (2d Cir. 2013) ("*RBS*"):

> "[C]laims that RBS had strong credit quality, that it had few problem loans, and that its risks remained stable all qualified as subjective evaluations . . . . [I]nsofar as Freeman challenges the offering documents' characterization of RBS's risk-management procedures as effective, this Court has frequently recognized that similar assurances of efficacy qualify as opinions, which cannot give rise to liability under §§ 11 & 12(a)(2) unless 'both objectively false and disbelieved by the defendant at the time [they were] expressed.'  Freeman has not plausibly alleged that the Defendants–Appellees, at the time they published the relevant offering documents, actually believed that the risk-management procedures described were not effective." (citations omitted)

Following the Court's decision in *Fait* v. *Regions Financial Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) ("*Fait*"), the district court (Batts, J.) held that Plaintiffs do not state a claim upon which relief can be granted under Sections 11, 12(a)(2) and 15 of the Securities Act because the claims are all based upon matters of opinion, and Plaintiffs do not allege that the opinions they challenge were both objectively false and disbelieved by Defendants at the time expressed.

The decision below should be affirmed for the same reasons as in *Fait*, in *ING* and in *RBS*.  In fact, the case for affirmance is more compelling than in those cases because here, in the wake of the financial crisis, Plaintiffs' counsel filed two purported securities class actions against Deutsche Bank: (i) this action alleging strict liability and negligence-based claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 on behalf of purchasers of Deutsche Bank trust preferred securities in 2006, 2007 and 2008; and (ii) a separate action in the same court alleging fraud-based claims under §§ 10(b) and 20 of the Securities Exchange Act of 1934 on behalf of purchasers of Deutsche Bank common shares during 2007 and 2008.[4] The two complaints were based on many of the same statements in the same public

---

[4] After a *Daubert* hearing, the district court granted Deutsche Bank's motion to preclude testimony from plaintiffs' expert witness and denied plaintiffs' motion for class action certification. *See IBEW Local 90 Pension Fund* v. *Deutsche Bank AG*, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) (Forrest, J.).  Plaintiffs did not appeal.  The fraud action has been dismissed with prejudice.

3

documents, but in this action Plaintiffs expressly disclaimed any allegations of intentional, knowing or reckless misconduct.[5]

## CHRONOLOGY OF PROCEEDINGS BELOW

On August 19, 2011, the district court granted in part and denied in part Defendants' motion to dismiss.  (*See* JA305-334)  In a subsequent opinion, the district court made clear that the only aspects of the CAC to survive that decision concerned "internal valuations of subprime and mortgage-backed assets" and estimates of "Value-at-Risk."  (JA407) – both matters of *judgment* and *opinion*.[6]

Four days later on August 23, 2011, the Court issued its opinion in *Fait*, holding that liability under the Securities Act for expression of opinion will lie

---

[5] *See* JA27, Consolidated Amended Complaint ("CAC") ¶ 1 ("The claims asserted herein exclusively rely upon theories of strict liability and negligence.  They do not sound in or arise from allegations of fraud."); JA90, CAC ¶ 189 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act."); JA92, CAC ¶ 203 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.").

These disclaimers were not inadvertent.  Plaintiffs sought to avoid a heightened pleading burden. *See Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud.").

[6] In its August 19, 2011 Opinion, the district court: (i) dismissed all claims concerning the October 2006 Offering (*see* JA312-16); (ii) dismissed all claims under Section 12(a)(2) for lack of standing (*see* JA330); and (iii) found that "[t]he CAC alleges no facts that are inconsistent with the Company's disclosure that it was increasing its proprietary trading activities and, correspondingly that it was exposed to increased risk from proprietary trading" (JA326, JA327), and that "[t]he CAC's allegations regarding the Company's exposures to monoline insurers . . . fail to state a claim . . . [because] [t]he Company's true exposure to monoline insurers was disclosed adequately." (JA328)  Plaintiffs do not appeal any of these rulings.  Challenges to district court rulings not raised on appeal are abandoned.  *See Litwin* v. *The Blackstone Group, L.P.*, 634 F.3d 706, 708 n.1 (2d Cir.), *cert. denied*, 132 S. Ct. 242 (2011).

"only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed." 655 F.3d at 110. Defendants timely moved for reconsideration, citing Plaintiffs' repeated disclaimers of intentional, knowing or reckless misconduct. *See* Dkt. 60.[7]

Plaintiffs stood pat. In response to Defendants' motion, Plaintiffs argued that *Fait* was not an intervening change in the law and that, in any event, it did not apply to their claims because the Securities Act is a strict liability statute and they did not have to allege fraud. *See* Dkt. 64, at 3-6. Plaintiffs did not request leave to amend, either outright or in the alternative, in order to satisfy the requirements set forth in *Fait*, and doubled-down by filing a Second Consolidated Amended Complaint ("SCAC") that omitted the claims that the district court had dismissed in its August 19, 2011 Opinion and, again, repeatedly disclaimed all allegations of intentional, knowing or reckless misconduct.[8] Simply put, Plaintiffs chose to fight *Fait*.

On August 10, 2012, the district court granted Defendants' motion for reconsideration. The district court fairly summarized Plaintiffs' remaining claims as

---

[7] As here, in *Fait* plaintiffs had similarly "disclaim[ed] any allegation that defendants knowingly or recklessly misstated" matters of opinion. *Fait* v. *Regions Financial Corp.*, 712 F. Supp. 2d 117, 122, 124-25 (S.D.N.Y. 2010) (Kaplan, J.), *aff'd*, 655 F.3d 105 (2d Cir. 2011). In *ING* and *RBS*, the plaintiffs also disclaimed allegations of intentional, knowing or reckless misconduct.

[8] *See* JA338, SCAC ¶ 1 ("The claims asserted herein exclusively rely upon theories of strict liability and negligence. They do not sound in or arise from allegations of fraud."); JA395-96, SCAC ¶ 174 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act."); JA398, SCAC ¶ 187 (same). Defendants filed an Answer to the SCAC while their motion for reconsideration was pending.

5

allegations that "Defendants' internal valuation systems were faulty" (JA407-08) with respect to mortgage-backed assets and value-at-risk estimates, finding that "such valuations are matters of opinion rather than fact" (JA408) and that "[a]fter *Fait*, Plaintiffs must allege that Defendants did not believe their valuation statements at the time they made them." (JA407-08) The district court dismissed the action with prejudice, holding that Plaintiffs "specifically aver that none of their claims are based on knowing misconduct by the Defendants. This alone is fatal to Plaintiffs' claims after *Fait*." (JA408) The district court further held that, because "Plaintiffs specifically state that none of their allegations are based on knowing misconduct, and the challenged statements amount to opinions which cannot form the basis of claims under the Securities Act unless Defendants subjectively disbelieved those opinions, amendment would be futile." (JA409)

Plaintiffs did not request leave to file a further amended pleading to retract their disclaimers of intentional, knowing or reckless misconduct, and on August 17, 2012 final judgment was entered dismissing the action with prejudice. (JA410)

On September 13, 2012, Plaintiffs moved for relief from final judgment, arguing that they could not have foreseen the change in law caused by *Fait*, and had new evidence to support their claims. (JA422-46) Plaintiffs also requested leave to amend, attaching a Proposed Third Consolidated Amended Complaint

6

("PTCAC") that mirrored the allegations of *scienter* filed more than a year earlier by their counsel in the *IBEW Local 90* action. (JA447-631)

On May 5, 2013, the district court denied Plaintiffs' post-judgment motion, holding that: (i) *Fait* "does not constitute an intervening change in controlling law; it was decided almost a year before the Court issued its Opinion and was relied upon in the Court's analysis" (JA749),[9] and (ii) that Plaintiffs had not presented anything new or newly discovered and that "[a]ll of the proposed evidence was available prior to the filing of the Clerk's Judgment." (JA750)[10] The district court found that "Plaintiffs have failed to meet the standard for a Motion to Reconsider under Federal Rule 59(e) (or the higher burden under Federal Rule 60(b))." (JA751)

## STATEMENT OF ISSUES

1.   Whether the district court correctly held that Deutsche Bank's disclosures concerning its exposure to hard-to-value mortgage-related-assets and its estimates of value-at-risk were matters of judgment and opinion.

---

[9] *Fait* relied on *Virginia Bankshares* v. *Sandberg*, 501 U.S. 1083 (1991). "Even prior to *Fait*, courts in this district have required allegations of disbelief where the statements involved inherently subjective matters—such as real estate appraisals, securities ratings, and valuations of complex securitized holdings." *In re OSG Sec. Litig.*, 2013 WL 4885890, at *6 n.82 (S.D.N.Y. Sept. 10, 2013) (Scheindlin, J.) (collecting cases). In fact, Lead Plaintiff Belmont Holdings had been told *two years earlier* that "[a]bsent an allegation that Defendants did not believe the [opinions they expressed], Plaintiff has not stated a claim . . . under Sections 11 or 12. . . ." *Belmont Holdings Corp.* v. *Sun Trust Banks, Inc.*, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) (Duffey, J.).

[10] In *IBEW Local 90*, Plaintiffs' counsel had earlier alleged intentional, knowing and reckless misconduct against Deutsche Bank with respect to many of the same disclosures. *See* n.4, *supra*.

2.      Whether the district court correctly held that Plaintiffs, who repeatedly disclaimed any allegations of intentional, knowing or reckless misconduct, and did not allege that Defendants did not honestly believe the opinions they expressed, failed to state a claim upon which relief can be granted under Section 11 of the Securities Act of 1933.

3.      Whether it was an abuse of discretion for the district court to hold that Plaintiffs – who proceeded through entry of final judgment arguing that *Fait* did not apply to their Securities Act claims – were not entitled to extraordinary relief from final judgment where they did not demonstrate an intervening change in controlling law, the availability of new or newly discovered evidence, or the need to correct a clear error or prevent manifest injustice.

4.      Whether it was an abuse of discretion for the district court, having properly denied Plaintiffs' motion for relief from final judgment, to deny Plaintiffs leave to further amend their complaint.

## <u>COUNTER-STATEMENT OF FACTS</u>

In October 2006, Deutsche Bank filed a shelf registration statement allowing it to sell the securities described therein.  Between October 2006 and May 2008 it conducted six offerings.  (JA27-8)  Each prospectus incorporated its prior SEC filings.  The evolving chronology of disclosure is compelling.

Prior to the first offering at issue in this action, in its SEC Form 20-F filed on March 23, 2006 (JA106-29) Deutsche Bank disclosed: "[i]n recent years we have increased our exposure to the financial markets . . . . Accordingly, we believe that we are more at risk from adverse developments in the financial markets. . . ." (JA109) Deutsche Bank disclosed: "[o]ur risk management policies, procedures and methods may leave us exposed to unidentified or unanticipated risks, which could lead to material losses." (JA112) Deutsche Bank disclosed its "aim to expand our presence in the U.S. market by growth in key businesses, such as equity derivatives and mortgage-backed securities" (JA117), that "[t]he biggest market risk in our nontrading portfolios are equity and real estate price risks" (JA128) and that "[m]onitoring the deterioration of prices of assets [that are not traded on stock exchanges or other public trading markets] is difficult and could lead to losses we did not anticipate." (JA110) Deutsche Bank did not represent that its MBS exposure was known or contained, and made no guarantees, rather it cautioned:

> "We have devoted significant resources to developing our risk management policies, procedures and assessment methods and intend to continue to do so in the future. Nonetheless, our risk management techniques and strategies may not be fully effective in mitigating our risk exposure in all economic market environments or against all types of risk, including risks that we fail to identify or anticipate. Some of our qualitative tools and metrics for managing risk are based upon our use of observed historical market behavior. We apply statistical and other tools to these observations to arrive at quantifications of our risk exposures. These tools and metrics may fail to predict future risk exposures. These risk exposures could, for example, arise from factors

9

we did not anticipate or correctly evaluate in our statistical models. This would limit our ability to manage our risks. Our losses thus could be significantly greater than the historical measures indicate. In addition, our quantified modeling does not take all risks into account. Our more qualitative approach to managing those risks could prove insufficient, exposing us to material unanticipated losses." (JA112)

Deutsche Bank cautioned: "[w]here valuation of financial instruments is subjective due to the lack of observable market prices or inputs, management must apply judgment to make estimates and certain assumptions." (JA121) Disclosure concerning the "limitations" of Deutsche Bank's proprietary value-at-risk models was provided (JA124-26), including that "value-at-risk analyses should also be viewed in the context of the limitations of the methodology we use and are therefore not maximum amounts that we can lose on our market risk positions." (JA125)

In its SEC Form 20-F filed on March 27, 2007 (JA131-63), again prior to the first offering at issue on appeal, Deutsche Bank disclosed: "[i]n recent years, we have increased our exposure to the financial markets as we have emphasized growth in our investment banking activities, including trading activities. Accordingly, we believe we are more at risk from adverse developments in the financial markets than we were when we derived a larger percentage of our revenues from traditional lending activities." (JA135) With respect to RMBS exposure, Deutsche Bank stated that it "intend[ed] to continue to invest in our platform in the United States, as evidenced in 2006 by our acquisition of MortgageIT Holdings, Inc., a residential mortgage originator, which significantly expands our scope in residen-

tial mortgage-backed securities." (Dkt. 46, at 6). Deutsche Bank cautioned that, with respect to assets like RMBS and CDOs that are not traded on public markets, "[m]onitoring the deterioration of prices of assets like these is difficult and could lead to losses that we did not anticipate," (JA136), and that "valuation techniques involve some level of management judgment and estimation," (JA138), including "[m]anagement judgment . . . in the selection and application of the appropriate parameters, assumptions and [risk] modeling techniques." (*Id.*) Again, Deutsche Bank did not represent that its MBS exposure was known or contained, and made no guarantees, rather it cautioned that, despite its devotion of significant resources to risk management: "our risk management techniques and strategies may not be fully effective in mitigating our risk exposure in all economic market environments or against all types of risk, including risks that we fail to identify or anticipate. . . . Our more qualitative approach to managing those risks could prove insufficient, exposing us to material unanticipated losses." (JA138-39) Deutsche Bank made extensive "quantitative and qualitative disclosures about credit, market and other risk" (JA157) as well as its value-at-risk analysis (JA157-63), and emphasized that its value-at-risk model "supplies forecasts for potential large losses under normal market conditions" (JA158), and that "[w]hile the risk managers have used their best judgment to define worst case scenarios based upon the knowledge of past extreme market moves, it is possible for our market risk positions to lose more value

11

that even our economic capital estimates." (JA159) Deutsche Bank cautioned: "The application of valuation techniques to determine fair value involves estimation and management judgment, the extent of which will vary with the degree of complexity and liquidity in the market. . . . Management judgment is required in the selection and application of the appropriate parameters, assumptions and modeling techniques." (JA148)

> "Our value-at-risk disclosure for the trading businesses is based on our own internal value-at-risk model. In October 1998, the German Banking Supervisory Authority (now the BaFin) approved our internal value-at-risk model for calculating the market risk capital for our general and specific market risks. Since then the model has been periodically reviewed and approval has been maintained." (JA157)

Deutsche Bank disclosed that "[m]arket declines and volatility can materially adversely affect our revenues and profits" and that "[p]rotracted market declines can reduce liquidity in the markets, making it harder to sell assets and possibly leading to material losses" (JA135), and, identifying "limitations of the value-at-risk methodology," emphasized "[o]ur value-at-risk analyses should also be viewed in the context of the limitations of the methodology we use and are therefore not maximum amounts that we can lose on our market risk positions." (JA159)

In its SEC Form 6-K filed on November 1, 2007 (JA222-230), prior to three of the offerings at issue on appeal, Deutsche Bank disclosed a substantial drop in net revenues (JA223) resulting "primarily from the rapid loss of liquidity in credit markets from August onwards. The substantial market turbulence caused break-

downs in relationships between credit securities and hedging instruments . . . . These together with the loss of liquidity negatively impacted credit trading positions in relative value trading, CDO correlation trading and residential mortgage-backed securities. . . ." (JA226)  Deutsche Bank cautioned that "[t]he third quarter of 2007 saw the environment for global economic growth deteriorate" and that "[l]ooking forward, challenges undoubtedly remain.  Difficulties in the U.S. residential mortgage market may persist, impacting the wider economy." (JA229) Deutsche Bank reported it was taking a €1.6 billion charge on trading activities, including trading in CDOs and RMBS. (JA223)

In its SEC Form 6-K filed on February 7, 2008 (JA232-239), prior to two of the offerings at issue on appeal, Deutsche Bank disclosed a 47% decrease in quarter-to-quarter net income (JA234), "reflecting weaker performance in trading of asset backed securities (including those backed by residential and commercial mortgages)," (JA 237), while noting that it "took no further losses on our remaining CDO exposures in the current quarter *after* taking into account related gains on hedge positions." (*Id.*) (emphasis added).  Deutsche Bank reiterated: "Looking forward, we expect conditions to remain challenging in 2008.  Uncertainties in the macro-economic environment are likely to affect capital markets-related businesses." (JA235)

13

In its SEC Form 20-F filed on March 26, 2008 (JA165-207), prior to the last offering at issue on appeal, Deutsche Bank repeated and updated these disclosures and emphasized: "we believe that we are more at risk from adverse developments in the financial markets" than in prior years, and that "[s]ince the second half of 2007, financial markets have experienced exceptionally difficult conditions, which have been reflected in considerably lower volumes of business activity in the areas most directly affected and concerns about slowing economic and business momentum more generally.  Among the principally affected areas in which we do business have been the leveraged finance and structured credit markets." (JA169-170; *see also* JA171-72)  Deutsche Bank noted the "exceptionally difficult market conditions since the second half of 2007" (JA171; JA174), emphasizing in bold print "WE MAY INCUR SIGNIFICANT LOSSES FROM OUR TRADING AND INVESTMENT ACTIVITIES DUE TO MARKET FLUCTUATIONS." (JA170)  Deutsche Bank cautioned:

> "The application of valuation techniques to determine fair value involves estimation and management judgment, the extent of which will vary with the degree of complexity and liquidity in the market.  Management judgment is required in the selection and application of the appropriate parameters, assumptions and modeling techniques.  If any of the assumptions change due to negative market conditions or for other reasons, subsequent valuations may result in significant changes in the fair values of our financial instruments, requiring us to record further write-downs.  Market volatility increases the risk that the value of financial instruments carried at fair value will change in the future." (JA172; *see also* JA184-85)

14

With specific reference to its MBS exposure, Deutsche Bank cautioned:

> "Our results for the fiscal year 2007 included losses relating primarily to the write down in the fair values of our trading activities in relative value trading in both debt and equity, CDO correlation trading and residential mortgage-backed securities, and the leveraged loan book including loan commitments. We continue to have exposure to these markets and products and, therefore, could be required further to write down their carrying values and incur further losses. Any of these write-downs could have a material adverse effect on our results of operation and financial condition." (JA172)

Deutsche Bank disclosed its "CDO subprime exposure," its "U.S. mortgage business exposure" and its "monoline exposure related to U.S. residential mortgages" both textually and numerically (JA189-91), emphasizing that "our risk management techniques and strategies may not be fully effective in mitigating our risk exposure." (JA172) Deutsche Bank made detailed disclosures regarding the limitations of its proprietary risk models, including its VaR analysis (JA193-98), warning that "not all downside scenarios can be predicted and simulated" and that "it is possible for our market risk positions to lose more value than even our economic capital estimates." (JA196) "Our value-at-risk analyses should also be viewed in the context of the limitations of the methodology we use and are therefore not maximum amounts that we can lose on our market risk positions." (JA196)

In its SEC Form 6-K filed on April 29, 2008 (JA241-52), again prior to the last offering at issue, Deutsche Bank disclosed: "We reported a LOSS BEFORE INCOME TAXES of €254 million for the quarter, versus income before income

15

taxes of €3.2 billion in the first quarter of 2007."  (JA244; emphasis in original) Deutsche Bank disclosed both textually and numerically its "CDO subprime," "U.S. residential mortgage business exposure" and "monoline exposure related to U.S. residential mortgages" (JA247-49), stating "[c]apital market conditions have deteriorated further in the first quarter [of 2008]," "[t]he U.S. housing market is still weak" and "the near-term outlook is highly uncertain." (JA251-52)

The ensuing financial crisis "took many experts by surprise." *Fulton County Employees Retirement Sys.* v. *MGIC Inv. Corp.*, 675 F.3d 1047, 1050 (7th Cir. 2012).  Even those with the highest vantage points did not see the crisis coming:

- "Almost all of us involved in the financial system, including financial firms, regulators, rating agencies, analysts, and commentators, missed the powerful combination of forces at work and the serious possibility of a massive crisis." (Robert E. Rubin, Former Secretary of the U.S. Treasury);[11]

- "I did not anticipate a crisis of this magnitude and this severity." (Ben Bernanke, Chairman of the Federal Reserve);[12]

- "This crisis . . . has turned out to be much broader than anything I could have imagined."  (Alan Greenspan, Former Chairman of the Federal Reserve).[13]

---

[11] *Testimony by Robert E. Rubin Before the Financial Crisis Inquiry Commission* (2010), *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0408-Rubin.pdf.

[12] *Nomination of the Hon. Ben S. Bernanke: Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs*, 11th Cong. 1 (2009), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-111shrg54239/html/CHRG-111shrg54239.htm.

[13] *Hearing before the H. Comm. of Gov't Oversight and Reform*, 110th Cong. 2 (2008) (statement of Dr. Alan Greenspan, former Chairman of the Fed. Reserve. Bd.), *available at* http://clipsandcomment.com/wp-content/uploads/2008/10/greenspan-testimony-20081023.pdf.

*See also Suggestions for Regulation of Hedge Funds Following the Financial Crisis of 2008 Be-*

16

The period's volatility is evidenced in recently released transcripts of the 2008 meetings of the Federal Reserve's Federal Open Market Committee, which reveal in great detail the uncertainty that existed among even those at the highest levels of government concerning the direction of the housing and mortgage markets and the economy generally. *See Interactive Summary: The Fed's Actions in 2008: What the Transcripts Reveal*, N.Y. Times, Feb. 21, 2014 ("How did the financial system break down?  Slowly, and then all at once."), *available at* http://www.nytimes.com/interactive/2014/02/21/business/federal-reserve-2008-transcripts.html?_r=0.

## **SUMMARY OF ARGUMENT**

The issue on this appeal is not whether Deutsche Bank acted with fraudulent intent or even whether its opinions as to its exposure to hard-to-value mortgage-backed securities and estimates of value-at-risk turned out to be inaccurate.  It is whether Plaintiffs adequately alleged that those who expressed those opinions did not honestly believe them at the time they were expressed.  Plaintiffs did not.

---

*fore the H. Comm. on Oversight and Gov't Reform* (2008) (statement of Prof. David S. Ruder) ("None of the primary market participants predicted the collapse. The risk management systems of most banks, investment banks, rating agencies, and credit default swap insurers did not predict the collapse. Regulators, including the Federal Reserve Board, the Federal Deposit Insurance Corporation, the Department of the Treasury, the SEC, and the Commodity Futures Trading Commission did not predict the collapse."), *available at* http://oversight-archive.waxman.house.gov/documents/20081113101847.pdf.

As in *Fait*, as in *ING* and as in *RBS*, here Plaintiffs failed to allege – indeed, they tactically disclaimed any allegation – that Defendants did not honestly believe the opinions they expressed in the offering documents at issue. Plaintiffs "simply seized upon disclosures made in later . . . reports and alleged that they should have been made in earlier ones." *Denny* v. *Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.).[14]

Plaintiffs argue that *Freidus* v. *Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013) ("*Barclays*"), compels reversal. It does not. In *Barclays*, the Court reaffirmed its holding in *Fait* "that defendants may be liable under §§ 11 and 12(a)(2) for misstatements of belief and opinion, 'to the extent that the [belief or opinion] was both objectively false and disbelieved by the defendant at the time it was expressed.'" *Id.* at 141. Citing *Fait*, the Court reiterated that "allegations of disbelief of subjective opinions are not the same as allegations of fraud," and that subjective disbelief claims need not "necessarily be brought as fraud claims." *Id*. Here, the district court did not dismiss because Plaintiffs failed to allege fraud. It dismissed because Plaintiffs failed to allege falsity.

As its title makes clear, Section 11 governs civil actions "on account of [a] *false* registration statement." 15 U.S.C. § 77k (emphasis added). By its terms, Sec-

---

[14] *See also Bayerische Landesbank* v. *Aladdin Capital Management LLC*, 692 F.3d 42, 62 (2d Cir. 2012) ("The allegations about how Aladdin added specific Reference Entities to the Reference Portfolio that were 'recklessly' exposed to the housing market and that experienced Credit Events appear to be pleading gross negligence by hindsight.").

tion 11 imposes liability "[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material *fact* or omitted to state a material *fact* required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a) (emphasis added). Section 11 requires *falsity* with respect to a *fact*.

Opinions are not facts, they are beliefs. Requiring a well-pleaded allegation of subjective falsity with respect to statements of opinion "does not amount to a requirement of *scienter*," *Fait*, 655 F.3d at 112 n.5, but rather "ensures that [the plaintiff's] allegations concern the factual components of those statements." *Id.* at 112. As the Supreme Court recognized in *Virginia Bankshares* v. *Sandberg*, 501 U.S. 1083 (1991), "a statement [of opinion] by definition purports to express what is consciously on the speaker's mind," 501 U.S. at 1090, cited in *Fait*, 655 F.3d at 111-12 and n.5. A statement of opinion can only be false—and thus actionable— to the extent it is "a misstatement of the psychological fact of the speaker's belief in what he says." 501 U.S. at 1095. To establish that the expression of an opinion was a material misstatement of fact, the plaintiff must therefore show that the speaker in fact "did not hold the beliefs or opinions expressed." 501 U.S. at 1090.[15] This is known as "subjective falsity." *Fait*, 655 F.3d at 113. *See also Rubke* v.

---

[15] Plaintiffs' effort to distinguish claims under Section 11 from those involving *scienter* is misplaced. In *Virginia Bankshares*, the Supreme Court "reserved the question whether *scienter* was necessary for liability generally under Section 14(a)." 501 U.S. at 1090 n.5.

*Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) ("[O]pinions . . . can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading.").[16]

Plaintiffs challenge disclosure as to (i) <u>exposure</u> to RMBS, CDOs and other hard-to-value mortgage-related assets, and (ii) <u>estimates</u> of value-at-risk. These are not matters of objective fact, but rather "reflect management's opinion or judgment" and are "inherently subjective." *Fait*, 655 F.3d at 113. RMBS assets are large loan portfolios, and "'[t]he estimation of probable losses in a large loan port-folio . . . is more an art than a science, and . . . any two analyses of probable losses in the same portfolio are unlikely to exactly correspond.'" *Id.* (citation omitted). The element of falsity necessary to state a claim under Section 11 requires that Plaintiffs must allege that Defendants did not honestly believe their opinions at the time they were expressed.[17] Here, Plaintiffs never so alleged, and the district court properly dismissed their complaint.

---

[16] The only appellate decision to disagree with the Court's decision in *Fait* is *Indiana State District Council of Laborers & HOD Carriers Pension & Welfare Fund* v. *Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013) ("*Omnicare*"). On March 3, 2014 the Supreme Court granted defendants' petition for a writ of *certiorari* to review *Omnicare*. --- S. Ct. ---, 2014 WL 801097, at *1 (Mar. 3, 2014). The question presented is: "For purposes of a Section 11 claim, may a plaintiff plead that a statement of opinion was "untrue" merely by alleging that the opinion itself was objective-ly wrong, as the Sixth Circuit has concluded, or must the plaintiff also allege that the statement was subjectively false—requiring allegations that the speaker's actual opinion was different from the one expressed—as the Second, Third, and Ninth Circuits have held?" Petition for Writ of Certiorari, *Omnicare, Inc.* v. *Laborers District Council*, 2013 WL 5532735 (Oct. 4, 2013) (No. 13-435).

[17] *See ING*, 2013 WL 6150769, at *1 ("Liability for opinions under the Securities Act will lie

After they lost, Plaintiffs did not carry their "onerous burden" of demonstrating by "highly convincing" evidence the presence of exceptional circumstances warranting the extraordinary relief from final judgment that they sought,[18] and Plaintiffs' *post*-judgment request for leave to amend was properly rejected by the district court in the exercise of its discretion. *See Williams* v. *Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011). Where, as here, "a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality. As a procedural matter, '[a] party seeking

---

'only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed.'") (involving statements as to quality of RMBS assets); *RBS*, 540 Fed. App'x at 37 ("[T]his Court has frequently recognized that similar assurances of efficacy qualify as opinions, which cannot give rise to liability under §§ 11 & 12(a)(2) unless 'both objectively false and disbelieved by the defendant at the time [they were] expressed.'") (involving statements as to exposure to subprime assets and the efficacy of risk controls); *Barclays*, 734 F.3d at 141 ("defendants may be liable under §§ 11 & 12(a)(2) for misstatement of belief and opinion, 'to the extent that the [belief or opinion] was both objectively false and disbelieved by the defendant at the time it was expressed.'") (involving statements as to exposure to credit-market risks); *Fait*, 655 F.3d at 110 (Liability for opinions under the Securities Act will lie "only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed.") (involving statements about strength of capital base necessary to balance certain risks). *See also Kleinman* v. *Elan Corp., PLC*, 706 F.3d 145, 153 (2d Cir. 2013) ("Subjective statements can be actionable only if the 'defendant's opinions were both false and not honestly believed when they were made.'") (involving statements as to the encouraging nature of clinical drug trial results); *City of Omaha Civilian Emps. Ret. Sys.* v. *CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (pleading facts "that *should* have led [defendants] to begin interim impairment testing earlier . . . would not suffice to state a securities fraud claim after *Fait*" where "complaint is devoid even of conclusory allegations that defendants did not believe in their statements of opinion regarding CBS's goodwill at the time they made them") (emphasis in original) (involving statements as to goodwill).

[18] *See United States* v. *Int'l Brotherhood of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001) ("The party seeking relief from judgment has an onerous standard to meet."); *Kotlicky* v. *United States Fidelity & Guaranty Co.*, 817 F.2d 6, 9 (2d Cir. 1987) ("Generally, courts require that the evidence in support of the motion to vacate a final judgment be 'highly convincing. . . .'").

to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).' . . . 'Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint.' . . . '[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'" *Id.* (citations omitted).

"To require the district court to permit amendment here would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision.  Such a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances." *James* v. *Watt*, 716 F.2d 71, 78 (1st Cir. 1983) (Breyer, J.).

## STANDARDS OF REVIEW

The Court reviews *de novo* the dismissal of a complaint under Rule 12(b)(6), *Cantor Fitzgerald Inc.* v. *Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002), and may affirm "on any ground for which there is support in the record."  *AmBase Corp*. v. *City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).

The denial of Plaintiffs' motion for reconsideration is "reviewed only for abuse of discretion." *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d

36, 52 (2d Cir. 2012); *see also Devlin* v. *Transp. Comm. Intern. Union*, 175 F.3d 121, 132 (2d Cir. 1999).

The denial of Plaintiffs' motion for relief from final judgment is reviewed "for abuse of discretion" and will be reversed "only if the court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." *Baker* v. *Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000); *Empresa Cubana del Tabaco* v. *Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) (Rule 59(e)); *Johnson* v. *Univ. of Rochester Med. Center*, 642 F.3d 121, 125 (2d Cir. 2011) (Rule 60(b)).

The denial of Plaintiffs' post-judgment motion for leave to amend is reviewed "for abuse of discretion," *Williams,* 659 F.3d at 212 (citations omitted), and "[w]hen the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactly." *State Trading Corp. of India, Ltd.* v. *Assurance- foreningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). "[A] party seeking to file an amended complaint post judgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)." *Williams*, 659 F.3d at 213 (quoting *Ruotolo* v. *City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)); *National Petrochemical Co. of Iran* v. *M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991). Where a post-judgment motion to set aside the judgment is not granted, any accompanying

motion to amend is "moot."  *Janese* v. *Fay*, 692 F.3d 221, 225 (2d Cir. 2012); *Williams*, 659 F.3d at 213; *National Petrochemical*, 930 F.2d at 245.

## ARGUMENT

Plaintiffs present three issues—and three issues only—on appeal: (i) whether Item 503 of Regulation S-K, 17 C.F.R. § 229.503(c), and "various accounting principles" required different disclosure relating to Deutsche Bank's alleged "€20 billion exposure to risky subprime/nonprime mortgage-related assets"; (ii) whether Deutsche Bank's assessments of its value-at-risk were "opinions"; and (iii) whether Plaintiffs were entitled to relief from judgment so they could file a third consolidated amended complaint to allege matters that they had intentionally omitted from their prior pleadings.  (Pls. Br. 3-4)  We discuss each in turn.  None has merit.

## I.    PLAINTIFFS FAILED TO STATE A CLAIM FOR VIOLATION OF ITEM 503 AND "VARIOUS ACCOUNTING PRINCIPLES"

### A.    The District Court Correctly Held that Plaintiffs' Disclosure-Based Claims Were Matters of Subjective Opinion and that Plaintiffs Failed to Plead Subjective Falsity.

Plaintiffs argue that Deutsche Bank failed to disclose an alleged "€20 billion exposure to risky subprime/nonprime mortgage-related assets."  (Pls. Br. 30)  The district court found that this amounted to a claim that "Defendants' internal valuation systems were faulty" and thus that Plaintiffs were challenging a "matter of opinion rather than fact."  (JA407-08)  Because Plaintiffs disclaimed allegations of intentional, knowing or reckless misconduct, and otherwise failed to plead

24

Deutsche Bank "did not honestly believe those valuations when made," the district court rightly dismissed the claims with prejudice. (JA408)

Section 11 requires the assessment of information a registrant knows as of the time of the securities offering. *See* 15 U.S.C. § 77k(a) ("In case any part of the registration statement, *when such part became effective*. . . .") (emphasis added). Plaintiffs seek to distinguish between what they call their "disclosure-based arguments" from their "valuation-based claims," and attempt to remove their "disclosure-based" claims from the rule of *Fait*.[19] (Pls. Br. 30) But the failures of disclosure of which Plaintiffs complain are all failures accurately to assess forward-looking risks concerning hard-to-value RMBS and CDOs. As in *ING* and in *RBS*, these are matters of judgment concerning non-publicly traded hard-to-value assets, and thus expressions of opinion subject to the rule of *Fait*.[20] Plaintiffs' disclaimer

---

[19] Plaintiffs' argument that *Fait*-based analysis has no application to its disclosure-based arguments was considered directly and rejected in *AIG*. *See* 2013 WL 1787567, at *4. "The question whether a particular risk mitigant was appropriate when implemented is inherently a matter of judgment or opinion." *In re Lehman Brothers Securities and ERISA Litig.*, 799 F. Supp. 2d 258, 285 (S.D.N.Y. 2011) (Kaplan, J.).

[20] *See ING*, 2013 WL 6150769 (affirming dismissal based on *Fait* of action complaining of disclosures relating to RMBS exposure of international bank); *RBS*, 540 Fed. App'x 33 (affirming dismissal based on *Fait* of action complaining of subprime exposure of international bank); *see also Lighthouse Financial Group* v. *Royal Bank of Scotland Group, PLC*, 902 F. Supp. 2d 329, 345 (S.D.N.Y. 2012) (Daniels, J.) (*Fait* "applies to Plaintiffs' claims about RBS's [subprime] holdings with equal weight, as all of Plaintiffs' claims relate to the dollar value of RBS's complex securitized holdings, which requires valuation.").

"Following *Fait*, courts have held that opinions include statements in registration statements and prospectuses regarding conformity with GAAP and GAAS, accounting valuations, credit and securities analysts' ratings, fairness of business combinations, and issuers' business operations and performance." Paul Dutka, *Defending 1933 Act Claims: Rewriting the Playbook After Fait*

25

of intentional, knowing or reckless misconduct is the disclaimer of any allegations that management did not honestly believe the opinions expressed when they were expressed.[21]

Plaintiffs' reliance on Item 503 of SEC Regulation S-K is misplaced. Item 503 requires that, "*[w]here appropriate*," a prospectus include "a discussion of the *most significant* factors that make the offering speculative or risky." 17 C.F.R. § 229.503(c) (emphasis added). The language "where appropriate," "leave[s] to the issuer the decision as to whether or not to include a 'Risk Factors' section." 2 *Bromberg & Lowenfels on Securities Fraud* § 5:277 (2d ed. 2013). And when a "disclosure obligation is only triggered where the concentration of credit risk is 'significant'—[it is] a determination that hinges on management's judgment." *See In re American Int'l Group, Inc., 2008 Sec. Litig.*, 2013 WL 1787567, at *4 (S.D.N.Y. Apr. 26, 2013) ("*AIG*") (Swain, J.). "The decision not to disclose credit

---

*v. Regions Fin. Corp.*, 45 Sec. Reg. & L. Rep. 1531 (2013) (footnotes and citations omitted); Linda L. Griggs *et al.*, *The SEC's Renewed Interest in Accounting Cases – A New Beginning or a Victim of Fait?*, 45 Sec. Reg. & L. Rep. 1663 (2013) (marshaling cases applying *Fait's* requirement of an allegation of subjective falsity to valuations of CDOs and RMBS and to significant concentrations of credit risk). *See also* authorities cited in n.17, *supra*.

[21] *See Lighthouse Financial Group*, 902 F. Supp. 2d at 345 ("With the benefit of hindsight, Plaintiffs cannot establish falsity by simply pointing to the credit crisis and making conclusory allegations that because RBS ultimately was forced to take $11 billion in credit market write-downs, its earlier statements about portfolio risk were necessarily false."); *NECA–IBEW Pension Trust Fund* v. *Bank of America Corp.,* No. 10 Civ. 440(LAK)(HBP), 2012 WL 3191860, at *13 (S.D.N.Y. Feb. 9, 2012) (Pitman, M.J.) ("[T]he mere fact that [] writedowns subsequently turned out to be insufficient—or were substantially smaller than the write-downs taken by industry peers with 'similar' portfolios—would not render those figures false at the time that they were publicly filed with the SEC.").

risk . . . is therefore tantamount to an implicit representation that management was not of the opinion that the concentration of credit risk was significant." *Id.*; *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 291 (S.D.N.Y. 2011) (Kaplan, J.) ("The question whether a particular concentration of credit risk is 'significant' within the meaning of SFAS 107 is a matter of judgment.").

As demonstrated in the Counter-Statement of Facts above, Deutsche Bank disclosed its exposure to RMBS and CDOs and cautioned that its estimates of value-at-risk might not be the limits of loss. Allegations that Deutsche Bank may have later "changed [its] views with the benefit of hindsight" are insufficient. *RBS*, 540 Fed. App'x at 37; *see also Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Corporate officials need not be clairvoyant . . . . Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.").

"[T]o withstand dismissal at the pleading stage, a complaint alleging omissions of Item 503 risks needs to allege sufficient facts to infer that a registrant *knew*, as of the time of an offering, that (1) a risk factor existed; (2) the risk factor could adversely affect the registrant's present or future business expectations; and (3) the offering documents failed to disclose the risk factor." *Silverstrand Investments* v. *AMAG Pharmaceuticals, Inc*., 707 F.3d 95, 103 (1st Cir.) (emphasis add-

ed), *cert. denied*, 134 S. Ct. 174 (2013).  But here, Plaintiffs disclaimed any allegations of knowing misconduct.

Plaintiffs' reliance on "various accounting principles" within Generally Accepted Accounting Principles ("GAAP") is similarly unavailing.[22]  The Court found similar allegations insufficient in both *Fait* and *City of Omaha*.  *See Fait*, 655 F.3d at 113; *City of Omaha*, 679 F.3d at 67-69.

"GAAP does not prescribe a fixed set of rules, but rather represent 'the range of reasonable alternatives that management can use.'" *Ganino* v. *Citizens Util. Co*., 228 F.3d 154, 159 n.4 (2d Cir. 2000) (citing *Thor Power Tool Co*. v. *Commissioner*, 439 U.S. 522, 544 (1979)).[23]  GAAP principles involving disclosure of significant credit risks "hinge[] on management's judgment," *AIG*, 2013 WL 1787567, at *4, and permit "reasonable disagreements and deference to business

---

[22] That Plaintiffs should seek refuge on appeal in "various accounting principles" is strange.  In this action Plaintiffs initially sued but later abandoned all claims against Deutsche Bank's independent auditor, KPMG.  *Compare* JA40, CAC ¶ 56, *with* JA344-50, SCAC ¶¶ 20-51.  *See also Oklahoma Firefighters Pension & Retirement System* v. *Student Loan Corporation*, 951 F. Supp. 2d 479, 495 n.8 (S.D.N.Y. 2013) (Buchwald, J.) ("Typically, plaintiffs alleging a company's failure to comply with GAAP bring claims against the accounting firms who prepare, review, or audit the defendant company's financial disclosures. . . . We find it curious that plaintiffs have failed to do so here.") (citations omitted).

[23] "GAAP is not [a] lucid or encyclopedic set of pre-existing rules . . . [and is] [f]ar from a single-source accounting rulebook. . . . GAAP changes and, even at any one point, is often indeterminate.  '[T]he determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles.' . . . There are 19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question." *Shalala* v. *Guernsey Memorial Hospital*, 514 U.S. 87, 101 (1995).  *See also* Tsakumis, Campbell & Doupnik, *IFRS: Beyond the Standards*, Journal of Accountancy (Feb. 2009) (noting that "most of IFRS is principles-based" and "requires substantial judgment"), *available at* http://www.journalofaccountancy.com/issues/2009/feb/ifrsbeyondthestandards.

judgment," *Plumbers & Steamfitters Local 773 Pen. Fund* v. *Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010) (Pauley, J.).[24]

Passing whether discussion of GAAP is relevant in this case,[25] Deutsche Bank repeatedly disclosed that the accounting policies that it employed "require critical accounting estimates that involve complex and subjective judgments and the use of assumptions, some of which may be for matters that are inherently uncertain and susceptible to change."  (JA120; *see also* JA147, JA183, JA210)  Nowhere do Plaintiffs allege that Defendants did not honestly believe the opinions expressed on Deutsche Bank's financial statements when they were expressed.

Plaintiffs' reliance on *Litwin, Panther* and *Silverstrand* is misplaced.[26]

---

[24] *See* Samuel P. Gunther and Michael Y. Scudder, *Facts v. Opinions: The Securities Laws and Accounting Estimates After Fait v. Regions Financial Corp.*, 45 Sec. Reg. & L. Rep. 62 (2013) (cataloguing many aspects of GAAP that require the exercise of judgment and constitute opinion with the meaning of *Fait*).  *See, e.g.,* SFAS No. 5 (disclosure of loss contingencies); SFAS 107 (relating to "best estimate of fair value" and disclosure of "significant concentrations of credit risk"); AICPA Statement of Position 94-6 (disclosure of certain risks having a "significant financially disruptive effect on the normal functioning of the entity"); IFRS 7 (disclosure of "significance of financial instruments," including assets and liabilities measured "at fair value"); IAS 30 (disclosure of "significant concentrations of [] assets"; superseded by IFRS 7 on Jan. 1, 2007).

[25] Deutsche Bank ceased reporting under GAAP *before* any of the offerings at issue.  *See* Deutsche Bank Form 20-F for the year ended December 31, 2007; JA168 ("Except where we have indicated otherwise, we have prepared all consolidated financial information in this document in accordance with International Financial Reporting Standards ('IFRS') as issued by the International Accounting Standards Board ('IASB') and as endorsed by the European Union ('EU').  Until December 31, 2006, we prepared our consolidated financial information in accordance with generally accepted accounting principles in the United States ('US GAAP').").

[26] *Litwin* v. *The Blackstone Group, L.P.*, 634 F.3d 706 (2d Cir.), *cert. denied*, 132 S. Ct. 242 (2011), *Panther Partners, Inc.* v. *Ikanos Commun's, Inc.*, 681 F.3d 114 (2d Cir. 2012), and *Silverstrand Investments* v. *AMAG Pharmaceuticals, Inc.*, 707 F.3d 95 (1st Cir.), *cert. denied*, 134 S. Ct. 174 (2013).

- *Litwin* involved omissions of historic fact in connection with a claimed violation of Item 303, not Item 503, of Reg. S-K concerning (i) Blackstone's "flagship" business segment which constituted "37.4% of . . . total assets under management" (634 F.3d at 709); (ii) the equity fund's "single largest investment" which had just "lost an exclusive agreement [with] its largest customer" (*id*. at 711); and (iii) its real estate investments constituting "22.6% of [its] total assets under management." (*id*. at 712).[27]

- *Panther* involved omissions of historic fact in connection with the secondary offering of a semiconductor company where, prior to the offering, customers accounting for "72% of revenues" began complaining about defective chips and "the defect rate was, in essence, 100% for all chips sold to clients representing 72% of revenues. These circumstances were not simply 'potentially problematic' . . . they were very bad." (681 F.3d at 121-22).

- *Silverstrand* involved omissions of historic fact in a secondary offering by a pharmaceutical company where, prior to the offering, the company knew of reported problems with its "make-or-break" drug and had disclosed those problems to the FDA but not to the investing public (707 F.3d at 97, 103). The company knew that the problems raised "red flags" with the FDA and its ability "to remain as a going concern" was solely dependent on the commercialization and development of that one drug. (*Id*. at 104, 106).

---

[27] It was not until after judgment was entered that Plaintiffs sought for the first time to allege a violation of Item 303. (*See* Pls. Br. 32) Because violation of Item 303 was not alleged in any of the complaints filed in this action, it should not be considered on this appeal. *See United States* v. *Lauersen*, 648 F.3d 115, 115 (2d Cir. 2011). In any event, Item 303 only imposes a disclosure duty "where a trend, demand, commitment, event or uncertainty is both [1] *presently known* to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *Management's Discussion and Analysis of Financial Condition and Results of Operations,* Sec. Act Rel. No. 6835, 43 SEC Docket 1330, 1989 WL 1092885, at *4 (May 18, 1989) (emphasis added). "To plausibly plead such a failure to disclose claim, a complaint must allege: (1) that a registrant *knew* about an uncertainty before an offering; (2) that the *known* uncertainty is "reasonably likely to have material effects on the registrant's financial condition or results of operation"; and (3) that the offering documents failed to disclose the *known* uncertainty." *Silverstrand*, 707 F.3d at 103 (emphasis added); *see also Panther,* 681 F.3d at 120. Item 303 requires actual present knowledge, not clairvoyance. Plaintiffs' disclaimer of any knowing misconduct precludes a claim for violation of Item 303.

Whereas *Litwin*, *Panther* and *Silverstrand* each involved failures to disclose *historic facts*, here Plaintiffs complain of errors in matters of *opinion as to the future*.

"The subprime market had been in decline during the first half of 2007, but that did not necessarily imply a continuing slump, let alone a collapse." *Fulton County Employees Retirement System* v. *MGIC Investment Corp.*, 675 F.3d 1047, 1050 (7th Cir. 2012) (Easterbrook, C.J.).  At the time, those in charge of the economy were publicly stating: "I don't see (subprime mortgage market troubles) posing a serious problem.  I think it's going to be largely contained."  U.S.  Treasury Secretary Henry Paulson, Speech before The Committee of 100 (Apr. 20, 2007), *available at* http://www.committee100.org/podcast/.  Indeed, "[f]or every seller of subprime loans in 2007 who thought them overpriced, there was a buyer who expected to make a profit when the market went back up.  The crisis took many experts by surprise." *Fulton County,* 675 F.3d. at 1050 (citations omitted).

Exposure to mortgage-related assets is dependent upon the valuation of those assets and assessments of risk concerning non-publicly traded hard-to-value assets are inherently matters of opinion.  As demonstrated above, Deutsche Bank made considerable and continued disclosure of its exposure to mortgage-backed securities throughout the relevant period.  Risk was disclosed, and there were no guarantees.  While, with the benefit of hindsight, Plaintiffs challenge those disclosures, Plaintiffs do not anywhere allege that Defendants did not honestly believe

31

the opinions they expressed when they expressed them.  As in *Fait*, as in *ING* and as in *RBS*, the complaint was properly dismissed.

## B.  Deutsche Bank Adequately Informed the Market of its Exposure to Mortgage-Related Debt.

Dismissal was also appropriate because, in the face of a precipitous and unpredictable financial crisis, Deutsche Bank did in fact disclose its exposure to mortgage-related assets, and updated that disclosure throughout the relevant period.  *See* Counter-Statement of Facts, *supra*.

"'In evaluating a prospectus, we read it as a whole' . . . cover-to-cover" and "'[w]hen a registration statement warns of the exact risk that later materialized, a [s]ection 11 claim will not lie as a matter of law.'"  *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102-03 (2d Cir. 2013); *see also Olkey* v. *Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).  "There is 'no obligation for an issuer to identify specifically every type of asset or liability it possesses, so long as its disclosures are 'broad enough to cover' all instruments that are in fact relevant to the value of the issuer's securities.'"  *In re Royal Bank of Scotland Group PLC Sec. Litig.*, 2012 WL 3826261, at *7 (S.D.N.Y. Sept. 4, 2012) (Batts, J.), *aff'd*, 540 Fed. App'x 33 (2d Cir. 2013) (citing favorably decisions upholding "broad enough" disclosures "even though the specific type of asset at issue allegedly posed 'far greater risk[s]' than the general category of assets described").

32

In *RBS*, the district court rejected plaintiffs' claims of an alleged failure to disclose £34 billion in subprime exposure and risk concentration where defendant disclosed it "engages in securitization transactions of its financial assets including commercial and residential mortgage loans, commercial and residential mortgage related securities, U.S. Government agency collateralized mortgage obligations, and other types of financial assets."  2012 WL 3826261, at *7.  Finding RBS had thereby "disclosed that it engaged in securitization of residential mortgages," the court noted that plaintiffs were "point[ing] to the collapse of the mortgage-backed security market in an attempt to frame past statements as false or misleading." *Id.* ("[A] backward-looking assessment of the infirmities or mortgage-related securities . . . cannot help plaintiffs' case.").

Similarly, in *Slater* v. *A.G. Edwards & Sons, Inc*., 719 F.3d 1190 (10th Cir. 2013), the Tenth Circuit addressed the alleged failure to disclose exposure to mortgage-backed securities in three securities offerings done at the same time as those at issue in this action.  Noting that "[a]t the time, few economists or investment professionals foresaw the timing and breadth of the downturn," *Id.* at 1199, the Court of Appeals held that "the only information that was needed to make [the issuer's] comment about the Alt-A mortgage market not misleading was that [it] actually had direct exposure to that market." *Id*. at 1201.  As demonstrated above,

Deutsche Bank's disclosures made that clear, and are similar to the disclosures found non-actionable by the Court in *RBS*.[28]

Here, as detailed in the Counter-Statement of Facts, Deutsche Bank disclosed that it had significant exposure in connection with mortgage-related assets, and that future losses could exceed all estimates of value-at-risk. Deutsche Bank disclosed its involvement in mortgage-backed securities well prior to any of the offerings at issue on appeal (*see* JA128 (noting in March 2006 efforts to "expand our presence in the U.S. market by growth in . . . mortgage-backed securities") and Dkt. 46, 6 (noting in March 2007 an acquisition that "significantly expands our scope in residential mortgage-backed securities")), while simultaneously noting that "due to the lack of observable market prices or inputs, management must apply judgment to make estimates and certain assumptions." (JA121 (2005 20-F); *see also* (JA 136, 138 (2006 20-F) and JA 172, 184-85 (2007 20-F)).

With each successive filing, Deutsche Bank updated this disclosure, cautioning: (i) in March 2007 that it was now "more at risk from adverse developments in the financial markets" due to expanded investment banking activities (JA135); (ii) in November 2007 that a €1.6 billion charge taken on trading activities including residential mortgage-backed securities (JA223) and that "[d]ifficulties in the U.S.

---

[28] *See RBS*, 540 Fed. App'x at 37 ("[T]he statements on which [Plaintiff] relies would not have led a reasonable investor to conclude that RBS's 'securiti[z]ations of residential mortgages' did not include any subprime assets.").

residential mortgage market may persist" (JA229); (iii) in February 2008 that "we expect conditions to remain challenging in 2008" (JA235); and (iv) in March 2008 that it had approximately €13 billion in estimated exposure to U.S. subprime residential mortgage-related products (JA189-90) as to which it "could be required further to write down their carrying values and incur further losses." (JA172)

The law presumes "in favor of honesty and against fraud." *Duncan* v. *Jaudon*, 82 U.S. 165, 170 (1872); *Farrar* v. *Churchill*, 135 U.S. 609, 615 (1890) ("Fraud is never presumed . . . ."); *Union Switch & Signal Co.* v. *Day*, 16 F.2d 4, 6 (2d Cir. 1926) ("fraud is never presumed"); *In re Locust Bldg. Co.*, 299 F. 756, 765-66 (2d Cir. 1924) (same); *Stallo* v. *Wagner*, 233 F. 379, 382 (2d Cir. 1916) (same); *Starr* v. *Peck*, 1 Hill 270, 273 (N.Y. 1841) ("Honesty, not fraud, is to be presumed."). Absent well-pleaded allegations to the contrary, the Court must assume that Deutsche Bank was doing its best to honestly express its opinions in an unsettled and changing environment. *Fait* properly serves to protect such expressions of opinion from hindsight claims like those in this case.

## II.    STATEMENTS AS TO "VALUE-AT-RISK" ARE SUBJECTIVE OPINIONS; *FAIT* APPLIES; PLAINTIFFS FAILED TO PLEAD SUBJECTIVE FALSITY

Plaintiffs describe Value-at-Risk ("VaR") as a simple "metric, a statistical measure of market risk" (Pls. Br. 3) as if VaR is an objective number as to which there can be no disagreement. It is not.

35

"'Value at Risk' describes a general class of probabilistic models that measure the risk of loss in market risk sensitive instruments. These models measure the potential loss that could occur in normal markets, over a defined period, within a certain confidence level. VaR can measure the uncorrelated risks of single transactions or the correlated risks of several different exposures in a portfolio." *Plumbers & Steamfitters Local 773 Pen. Fund* v. *Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 295 n.1 (S.D.N.Y. 2010) (Pauley, J.) ("*CIBC*"), quoting SEC Questions and Answers About the New "Market Risk" Disclosure Rules (July 31, 1997), *available at* http://www.sec.gov/divisions/corpfin/guidance/derivfaq.htm ("SEC Market Risk Q&A"); s*ee also Bloomberg L.P.* v. *Commodity Futures Trading Comm'n*, 949 F. Supp. 2d 91, 99 (D.D.C. 2013) (Howell, J.) (VaR uses models "to predict what portion of a financial portfolio is statistically likely to be at risk of being lost in the market at any given point in time").

VaR calculations are the result of judgmental inputs run through proprietary models to produce predictions of potential future loss based on hypothetical conditions and time frames. The SEC "does not require uniform parameters for all companies." SEC Market Risk Q&A. VaR models are just that, models. They are proprietary and judgmental. *See id*. VaR analyses seek to address the future and what effect certain hypothetical future scenarios might have on an existing portfolio. The analysis is judgmental and the conclusion is an opinion. *See CIBC*, 694 F.

Supp. 2d at 301 (holding VaR models are "opinion" and granting motion to dismiss for failure to allege subjective falsity) (citing *In re Salomon Analyst Level 3 Litig.,* 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005) (Lynch, J.) ("First, the Court rejects plaintiffs' characterization of valuation models as 'fact' rather than 'opinion.' . . . [F]inancial valuation models depend so heavily on the discretionary choices of the modeler—including choice of method . . . , choice of assumptions . . . , and choice of 'comparables' that the resulting models and their predictions can only fairly be characterized as subjective opinions.")).[29]

Plaintiffs' attempt to characterize VaR as "unconditional" or a "guarantee" is misguided.  (Pls. Br. 50)  Deutsche Bank's 2007 20-F, for example, contained an entire seven-page section discussing Deutsche Bank's "value-at-risk analysis" (JA194-200), and the "limitations of [its] proprietary risk models" (JA196), making clear that such models reflect the exercise of judgment, and warning that the estimates of value-at-risk derived therefrom are not the "maximum amounts we can lose" (*Id.*) and "may not capture all potential events, particularly those that are extreme in nature."  (*Id.*)  Deutsche Bank made clear: "Value-at-risk does not cap-

---

[29] The complaint in *In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011) (Sweet, J.) alleged that the defendants "knew, or were reckless in not knowing, that the SEC had stated that Bear Stearns' valuation and VaR models were seriously flawed and that the models were never updated to reflect the housing and subprime mortgage downturn, and, as a consequence, Defendants were well aware that they were not including material information in their SEC filings and other public statements." *Id*. at 490. Here, Plaintiffs disclaimed any such comparable allegations of knowledge or recklessness.

ture all of the complex effects of the risk factors on the value of positions and port-

folios and could, therefore, underestimate potential losses." (*Id.*)

Plaintiffs assert that trading losses reported by Deutsche Bank "for 2008" far

exceeded the high end of the VaR range it reported in its 2007 20-F. (*See* Pls Br.

49) That is pure hindsight, and the fact that its VaR opinion proved to be an inac-

curate estimate of future losses does not provide a basis for an inference that

Deutsche Bank did not honestly believe that opinion when it was expressed.

"Even assuming the VaR metric was neither forward-looking nor accompa-

nied by appropriate cautionary language, Plaintiff cannot show the VaR calcula-

tions were both objectively and subjectively false. . . . Adopting Plaintiffs' calcu-

lus, CIBC's VaR metric was *objectively* inaccurate, but Plaintiffs do not allege that

Defendants knew of the error. . . ." *CIBC,* 694 F. Supp. 2d at 301. The mere fact

that writedowns stemming from the use or non-use of the Bank's VaR models sub-

sequently turned out to be insufficient does not render those figures false at the

time that they were made part of the Bank's public filings with the SEC. *NECA-*

*IBEW Pension Trust Fund* v. *Bank of America Corp.*, 2013 WL 620257, at *15

(S.D.N.Y. Feb. 15, 2013) (Pitman, M.J.) (citations omitted), adopted in full, No.

10-CV-0440 (LAK), at *1-2 (S.D.N.Y. Mar. 16, 2012), ECF No. 65 (Kaplan, J.):

> "A[t] most, plaintiffs' allegations still show only that [the Bank] over-
> valued illiquid assets whose valuation was highly subjective, and as a
> result, failed to take sufficient writedowns during the relevant time pe-

riod. . . . The mere fact that writedowns stemming from the use or non-use of [the Bank's] VAR models subsequently turned out to be insufficient does not render those figures false at the time that they were made part of [the Bank's] public filings with the SEC. . . especially because the assets at issue were 'not traded on the New York Stock Exchange or some other efficient market,' and are assets for which the value is generally a matter of subjective opinion."[30]

VaR is subjective opinion to which liability attaches only where the statement was "'both objectively false and disbelieved by the defendant at the time it was expressed.'" *Barclays*, 734 F.3d at 141-42 (applying *Fait's* subjective disbelief requirement to "financial valuation models which are inherently subjective"). Plaintiffs disclaimed any allegations of knowing or reckless misconduct and did not allege that Deutsche Bank did not honestly believe its VaR estimates when expressed. (JA90, JA92)  The 2008 financial crisis was exactly the type of event extreme in nature that would not have been captured within any normal VaR analysis. Plaintiffs point to nothing to suggest that the Bank believed otherwise.

## III.  PLAINTIFFS ARE NOT ENTITLED TO A DO-OVER

### A.  The District Court Correctly Dismissed Plaintiffs' Claims with Prejudice in the August 10, 2012 Opinion.

In its August 10, 2012 Opinion, the district court correctly dismissed the action with prejudice.  At that time, the district court (i) knew that Plaintiffs had in-

---

[30] Plaintiffs' reliance (Pls. Br. 49-50) on Judge Kaplan's earlier decision in *In re Lehman Bros. Securities & ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) is misplaced.  Plaintiffs refer to "factual allegations" about Lehman's VaR—but allegations (factual or otherwise) about opinion are still allegations about opinion, and there are no allegations here comparable to the Lehman's misconduct involving "Repo 105" and its <u>knowing</u> and routine breaches of VaR limits.

tentionally chosen to not assert any allegations of subjective disbelief, and (ii) had not seen *any* indication that Plaintiffs wished to abandon their legal theory to account for *Fait*.[31]   Plaintiffs had disclaimed allegations of intentional, knowing or reckless misconduct at every stage of this litigation, and had already filed eight individual and consolidated complaints that did not contain any allegations of subjective disbelief.[32]   After the Court's decision in *Fait* was brought to their attention, Plaintiffs persisted with their disclaimers in opposing Defendants' motion for reconsideration.   (*See* Dkt. 64, 4-6.)   Plaintiffs did not argue in the alternative that they should be granted leave to amend in light of *Fait*, and made no reference to any allegations of knowledge they could or would assert.   In fact, *after Fait* was

---

[31] Leave may be denied for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).

[32] *See* JA27, CAC ¶ 1 ("The claims asserted herein exclusively rely upon theories of strict liability and negligence.   They do not sound in or arise from allegations of fraud."); JA90, CAC ¶ 189 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act."); JA92, CAC ¶ 203 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act."); Pls. Opp. to Motion to Dismiss, Dkt. 50 at 5 ("[T]he CAC's Securities Act claims are based on strict liability and negligence, not fraud."); *id*. at 15 n.5 ("[T]he Complaint's allegations are clearly based on theories of strict liability and negligence . . . .   The CAC does not assert ***any*** claims of fraud, and expressly pleads strict liability and negligence as the basis for its Securities Act claims, using the language from the Act itself.   Moreover, the CAC does not allege any facts suggesting defendants acted with fraudulent intent.   None of the CAC's allegations 'sound in fraud,' as they do nothing more than follow the language of the Securities Act."); *id*. at 30 ("Because scienter is not an element of plaintiffs' Securities Act claims, plaintiffs need not show that defendants acted recklessly or knowingly when valuing its RMBS and debt securities.").

40

decided and *after* Defendants' filed their motion for reconsideration, Plaintiffs filed a Second Consolidated Amended Complaint that once again disclaimed allegations of intentional, knowing or reckless misconduct.  (JA 337-403)  In the circumstances, the district court correctly found that further amendment was futile.  (JA409)  *See Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[I]n the absence of any indication that Gallop could—or would—provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice.").

Plaintiffs argue that the district court erred in equating the disclaimer of intentional, knowing and reckless misconduct with a disclaimer of subjective disbelief.  (Pls. Br. 52-54)  But there was no error.  *See Fait* v. *Regions Fin. Corp.*, 712 F. Supp. 2d 117, 124-25 (S.D.N.Y. 2010) (Kaplan, J.) ("The complaint . . . is devoid of any allegation that defendants did not truly hold those opinions at the time they were made public.  Plaintiff indeed disclaims any allegation that defendants knowingly or recklessly misstated Regions' loan loss reserves" and goodwill.), *aff'd*, 655 F.3d 105 (2d Cir. 2011).  "By repeatedly disclaiming fraud and intentional or reckless misconduct . . . Plaintiffs have disavowed any allegation that the Defendants knowingly misstated any opinions they may have implicitly or explicitly communicated in the offering documents and SEC filings."  *AIG*, 2013 WL 1787567, at *4.  "It is not sufficient . . . to allege that an opinion was unreasonable,

41

irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held." *In re Salomon Analyst AT&T Litig.,* 350 F. Supp. 2d 455, 466 (S.D.N.Y. 2004) (Lynch, J.).

Plaintiffs argue that *Barclays* "repudiated" the district court's holding that Plaintiffs may not disclaim "knowing misconduct" and still allege subjective falsity. (Pls. Br. 53)  It did not.  While holding "that the district court erred in stating that claims of disbelief of subjective opinions must necessarily be brought as fraud claims," *Barclays* reaffirmed *Fait*, and did not alter the existing rule that to state a claim upon which relief can be granted under the Securities Act with respect to matters of opinion Plaintiffs must allege subjective falsity.  734 F.3d at 141.

*Fait* did not confuse *scienter* and falsity.  Neither did *Barclays*.  And the district court in this case did not err as had the district court in *Barclays*.  To state a claim upon which relief can be granted under Section 11 of the Securities Act, Plaintiffs were not required to allege *scienter*, but they were required to allege *falsity* with respect to a *fact*.  *See* 15 U.S.C. § 77k(a).  Because Plaintiffs are here challenging statements of opinion, they were required to allege that the opinions at issue were both objectively false and disbelieved by Defendants at the time they were expressed.  *See Fait*, 655 F.3d at 110; *Barclays*, 734 F.3d at 141; *ING*, 2013

WL 6150769, at *1; *RBS*, 540 Fed. App'x at 37; *Rubke*, 551 F.3d at 1162.  Despite

having every opportunity to do so, Plaintiffs did not allege subjective falsity.

### B.    The District Court Correctly Denied Plaintiffs' Motion for Reconsideration, Rendering Their Request for Leave to Amend Moot.

Plaintiffs did not move pursuant to Fed. R. Civ. P. 15 for leave to file an

amended complaint until *after* final judgment had been entered dismissing the ac-

tion with prejudice.  "[O]nce judgment is entered the filing of an amended com-

plaint is not permissible until judgment is set aside or vacated pursuant to Fed. R.

Civ. P. 59(e) or 60(b)."  *National Petrochemical Co. of Iran* v. *M/T Stolt Sheaf*,

930 F.2d 240, 244 (2d Cir. 1991) (citation and internal quotation marks omitted);

*Ruotolo* v. *City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("A party seeking to

file an amended complaint postjudgment must first have the judgment vacated or

set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).").[33]

Post-judgment motions for leave to amend "'are disfavored,'" *Horras* v. *Am.*

*Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (citation omitted), and

"[w]hen the moving party has had an opportunity to assert the amendment earlier,

---

[33] *See also United States ex rel Ge* v. *Takeda Pharmaceutical Co.*, 737 F.3d 116, 127 (1st Cir. 2013) ("'[A] district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set aside or vacated pursuant to Fed. R. Civ. P. 59 or 60.'") (citation omitted); *Calvary Christian Center* v. *City of Fredericksburg*, 710 F.3d 536, 539 (4th Cir. 2013) ("We have repeatedly held that a motion to amend filed after a judgment of dismissal has been entered cannot be considered until the judgment is vacated.") (citation omitted); *Tool Box, Inc.* v. *Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) ("This court has repeatedly and unequivocally held that, '[o]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)' . . . . Indeed, the rule is the same in our sister circuits.") (citations omitted).

but has waited until after judgment before requesting leave, a court may exercise its discretion more exactly. . . . [A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).[34]

"When a party seeks to amend a complaint after an adverse judgment, it [] must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60," *Leisure Caviar, LLC* v. *U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010), and demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992).[35] Plaintiffs did not carry this burden.

---

[34] *See also Bellikoff* v. *Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (plaintiffs "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies"); *In re General Electric Co. Sec. Litig.*, 2012 WL 2892376, at *3 (S.D.N.Y. July 12, 2012) (Cote, J.) ("In its proposed amended complaint, the Plaintiff seeks, for the first time, to assert claims under the Securities Act based on defendants' knowledge and intent. But in all of its pleadings and motion papers filed since the initiation of this action more than three years ago (constituting two consolidated amended complaints, briefing on a motion to dismiss, and multiple briefs on a motion for reconsideration), the Plaintiff explicitly disclaimed all allegations based on knowledge and intent pursuant to the Securities Act. This disclaimer allowed the Plaintiff to avoid the heightened pleading requirements of Rule 9(b) Fed. R. Civ. P. 9(b). . . . Having made a tactical decision to pursue a particular legal theory and explicitly abandon certain claims, Plaintiffs will not be excused from the necessary consequences of this decision.").

[35] *See also Analytical Surveys,* 684 F.3d at 52 ("'It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . .'" (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998))); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities*

44

Because the district court did not abuse its discretion in denying Plaintiffs'

motion for relief from judgment, Plaintiffs' request for leave to file a proposed

third consolidated amended complaint was "moot." *Janese* v. *Fay*, 692 F.3d 221,

225 (2d Cir. 2012) ("Following entry of judgment, the Plaintiffs moved for recon-

sideration of the District Court's order and for leave to amend the complaint to al-

lege fraud with greater particularity.  The District Court denied the motion for re-

consideration, rendering the motion to amend moot.").

"Unless there is a valid basis to vacate the previously entered judgment, it

would be contradictory to entertain a motion to amend the complaint." *National*

*Petrochemical*, 930 F.2d at 245.  "To hold otherwise would enable the liberal

amendment policy of Rule 15(a) to be employed in a way that is contrary to the

philosophy favoring finality of judgments and the expeditious termination of litiga-

tion." *Williams*, 659 F.3d at 213; *National Petrochemical*, 930 F.2d at 245.

Here, in moving for reconsideration, Plaintiffs did not identify any interven-

ing controlling law, but relied on decisions handed down well prior to the August

10, 2012 Opinion.  (JA431-32; JA438-40; JA749-50)  Plaintiffs cited no new evi-

dence, but rather cited information available to Plaintiffs well prior to the August

---

*Litig.*, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008) (Lynch, J.), *aff'd sub nom. Capital Mgmt. Select Fund Ltd.* v. *Bennett*, 680 F.3d 214 (2d Cir. 2012).

10, 2012 Opinion.  (JA433-38; JA750-51)  Plaintiffs did not argue "clear error or manifest injustice."

Plaintiffs assert that the district court offered no explanation for denying them leave to amend.  (Pls. Br. 54)  That is not true.  The district court explained that because "Plaintiffs have not demonstrated an intervening change in controlling law, the availability of new or newly discovered evidence, or the need to correct a clear error of law or prevent manifest injustice. . . . the August 9, 2012 Order dismissing the Complaint stands and Plaintiffs' Motion to Reconsider is DENIED with prejudice and without leave to amend."  (JA751-52)  The district court did not abuse its discretion in denying Plaintiffs' post-judgment motion.

Plaintiffs argue that "'an amended complaint ordinarily supersedes the original'" and "[t]he district court did not explain why the [P]TCAC . . . could not supersede the CAC."  (Pls. Br. 54)  But when the district court made its pre-judgment futility finding, the PTCAC did not exist.[36]  Because Plaintiffs failed to satisfy the standards for *post*-judgment relief under Rules 59 and 60, their belated Rule 15 motion was moot.  The PTCAC was never more than a *proposed* complaint, and did not supersede anything.

---

[36] This case is fundamentally different than *Barclays*, where this Court held that the district court should have permitted the plaintiffs to amend.  734 F.3d at 141-42.  As discussed, here, unlike in *Barclays*, Plaintiffs filed a Second Consolidated Amended Complaint that specifically disclaimed intentional, knowing or reckless misconduct *after Fait* was decided and *after* Defendants filed a motion for reconsideration based on *Fait*.  (JA 337-403)

## <u>CONCLUSION</u>

The decisions and judgment below should be affirmed.

March 10, 2014                          Respectfully submitted,


                                        By: <u>/s/   Charles A. Gilman</u>
                                              Charles A. Gilman

                                        CAHILL GORDON & REINDEL LLP
                                        Charles A. Gilman
                                        David G. Januszewski
                                        Brian Barrett
                                        Minh-Van Do
                                        80 Pine Street
                                        New York, New York  10005
                                        (212) 701-3000
                                        (212) 269-5420 (fax)
                                        *Attorneys for the Deutsche Bank Defendants*
                                        *and the Individual Defendants*

47

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that Defendants-Appellee's Brief uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief comprises 13,492 words according to the word count provided by Microsoft Word 2010 word processing software.


By:  <u>/s/   Brian Barrett</u>
       Brian Barrett