# No. 13-2364

*(Docket Number in District Court:  1:09-cv-01714-DAB)*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

BELMONT HOLDINGS CORP., NORBERT G. KAESS and MARIA FARRUGGIO, on Behalf of Themselves and All Others Similarly Situated, and named plaintiffs EDWARD P. ZEMPRELLI and PLUMBERS' UNION LOCAL NO. 12 PENSION FUND, on Behalf of Themselves and All Others Similarly Situated,

*Plaintiffs-Appellants*,

[Caption continued on following page.]

Appeal from the United States District Court
for the Southern District of New York

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

ROBBINS GELLER RUDMAN
  & DOWD LLP
ANDREW J. BROWN
STEVEN F. HUBACHEK
ERIC I. NIEHAUS
LUCAS F. OLTS
CHRISTOPHER D. STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058

LAW OFFICES BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600

Counsel for Plaintiffs-Appellants

935525_1

SHIRLEY BACHRACH, GEORGE GERSON, Individually and on Behalf of All Others Similarly Situated, and RIDGE OAK MANAGEMENT, INC, on Behalf of Itself and All Others Similarly Situated,

*Plaintiffs*,

vs.

DEUTSCHE BANK AG, DEUTSCHE BANK CAPITAL FUNDING TRUST VIII, DEUTSCHE BANK CAPITAL FUNDING LLC VIII, DEUTSCHE BANK CAPITAL FUNDING TRUST X, DEUTSCHE BANK CAPITAL FUNDING LLC X, JOSEF ACKERMANN, ANTHONY DI IORIO, BANZIGER HUGO, TESSEN VON HEYDEBRECK, HERMANN-JOSEF LAMBERTI, MARTIN EDELMANN, PETE STURZINGER, DETLEF BINDERT, JONATHAN BLAKE, MARCO ZIMMERMANN, UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, WACHOVIA CAPITAL MARKETS, LLC, MORGAN STANLEY & CO. INCORPORATED, DEUTSCHE BANK SECURITIES INC., BANC OF AMERICA SECURITIES LLC, DEUTSCHE BANK CONTINGENT CAPTIAL TRUST III, DEUTSCHE BANK CONTINGENT CAPTIAL TRUST V, DEUTSCHE BANK CONTINGENT CAPTIAL TRUST LLC V, DEUTSCHE BANK CAPITAL FUNDING TRUST IX, DEUTSCHE BANKD CAPITAL FUNDING LLC IX, RAINER RAULEDER, DEUTSCHE BANK CONTINGENT CAPITAL TRUST III, DEUTSCHE BANK CONTINGENT CAPITAL LLC III, KPMG DEUTSCHE TREUHAND-GESELLSCHAFT, KPMG INTERNATIONAL, DEUTSCHE BANK CONTINGENT CAPITAL TRUST II, DEUTSCHE BANK CONTINGENT CAPITAL LLC II,

*Defendants-Appellees.*

935525_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................1

II.    BECAUSE THE CAC PLEADED DEFENDANTS' KNOWLEDGE
       OF GRAVE RISK TO DB'S HOLDINGS BEFORE THE FIRST
       FOUR OFFERINGS AND MISLEADING VaR STATEMENTS,
       DISMISSING THE CAC WAS ERROR ..........................................5

       A.    Item 503 ..............................................................5

             1.    Defendants Violated Item 503 by Concealing Their Risky
                   Subprime/Nonprime Assets ........................................5

             2.    *Fait* Is Inapposite ................................................7

             3.    Even if Applicable, *Fait* Does Not Support Dismissal.............12

             4.    Plaintiffs Disclaimed Allegations of Fraud, Not *Fait*'s
                   Knowledge Requirement ...........................................13

             5.    Defendants' Generic Disclosures Do Not Satisfy Item
                   503................................................................15

       B.    The Accounting Principles ..............................................19

       C.    VaR ....................................................................21

III.   THE DISTRICT COURT ERRED UNDER *FOMAN*, *WILLIAMS*,
       AND *BARCLAYS* IN DENYING, WITHOUT EXPLANATION,
       PLAINTIFFS' POST-JUDGMENT MOTION TO FILE A
       COMPLAINT THAT SATISFIED *FAIT* ........................................22

       A.    *Foman*, *Williams*, and *Barclays* Require Reversal ...................22

       B.    The District Court's Dismissal of the CAC with Prejudice Was
             Error...................................................................26

- i -

**Page**

       C.     Defendants' Proposed "Mootness" Rule Is Not Supported by the Cases They Cite, and Conflicts with *Foman*, *Williams*, and *Barclays* ................................................................................................28

IV.    CONCLUSION.................................................................................................32

935525_1

## TABLE OF AUTHORITIES

**Page**

## CASES

*Branum v. Clark,*
  927 F.2d 698 (2d Cir. 1991) ..............................................................27

*City of Omaha v. CBS Corp.,*
  679 F.3d 64 (2d Cir. 2012) ................................................................13

*Cooper v. Shumway,*
  780 F.2d 27 (10th Cir. 1985) .............................................................29

*Dluhos v. Floating & Abandoned Vessel,*
  162 F.3d 63 (2d Cir. 1998) ................................................................23

*Fait v. Regions Fin. Corp.,*
  655 F.3d 105 (2d Cir. 2011) .......................................................*passim*

*Foman v. Davis,*
  371 U.S. 178 (1962)....................................................................*passim*

*Freeman Group v. Royal Bank of Scotland Group PLC,*
  540 F. App'x 33 (2d Cir. 2013) ..........................................................9

*Freidus v. Barclays Bank PLC,*
  734 F.3d 132 (2d Cir. 2013) .......................................................*passim*

*Freidus v. ING Groep, N.V.,*
  543 F. App'x 93 (2d Cir. 2013) ..........................................................9

*Henry v. Daytop Village,*
  42 F.3d 89 (2d Cir. 1994) ..................................................................13

*In re Am. Int'l Group, 2008 Secs. Litig.,*
  No. 08Civ4772, 2013 U.S. Dist. LEXIS 60185
  (S.D.N.Y. Apr. 26, 2013)..............................................................9, 20

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ............................................................20

935525_1

**Page**

*In re Citigroup Inc. Sec. Litig.*,
　753 F. Supp. 2d 206 (S.D.N.Y. 2010) .........................................................13, 20

*In re Lehman Bros. Sec. & ERISA Litig.*,
　799 F. Supp. 2d 258 (S.D.N.Y. 2011) ...........................................................*passim*

*In re Morgan Stanley Info. Fund Sec. Litig.*,
　592 F.3d 347 (2d Cir. 2010) ...................................................................8, 10, 16

*In re ProShares Trust Secs. Litig.*,
　728 F.3d 96 (2d Cir. 2013) .................................................................................17

*In re Royal Bank of Scot. Group PLC Sec. Litig.*,
　No. 09Civ.300(DAB), 2012 U.S. Dist. LEXIS 126220
　(S.D.N.Y. Sept. 4, 2012) ..................................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
　346 F. Supp. 2d 628 (S.D.N.Y. 2004) ...............................................................10

*Janese v. Fay*,
　692 F.3d 221 (2d Cir. 2012) .............................................................................31

*Krainski v. State ex rel. Bd. of Regents*,
　616 F.3d 963 (9th Cir. 2010) ...........................................................................27

*Litwin v. Blackstone Grp., L.P.*,
　634 F.3d 706 (2d Cir. 2011) .......................................................................11, 12

*National Petrochemical Co. v. The M/T Stolt Sheaf*,
　930 F.2d 240 (2d Cir. 1991) ............................................................4, 29, 30, 31

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
　No. 10Civ.440(LAK)(HBP), 2013 U.S. Dist. LEXIS 21869
　(S.D.N.Y. Feb. 15, 2013) ...................................................................................22

*Olkey v. Hyperion 1999 Term Trust*,
　98 F.3d 2 (2d Cir. 1996) ...................................................................................17

935525_1

**Page**

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
__ U.S. __, 134 S. Ct. 1490 (2014).....................................................................2

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) ...............................................11, 14, 17

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian
Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010) ..................................20, 21, 22

*Press v. Quick & Reilly, Inc.*,
218 F.3d 121 (2d Cir. 2000) ...............................................................15

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008) .......................................................30, 31

*SEC v. Obus*,
693 F.3d 276 (2d Cir. 2012) ...............................................................14

*Seow Lin v. Interactive Brokers Grp., Inc.*,
574 F. Supp. 2d 408 (S.D.N.Y. 2008) ...............................................11

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
707 F.3d 95 (1st Cir. 2013),
*cert. denied*, 134 S. Ct. 174 (2013)..........................................*passim*

*Slater v. A.G. Edwards & Sons, Inc.*,
719 F.3d 1190 (10th Cir. 2013) .........................................................18

*State Trading Corp. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990) ...............................................................30

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010) .................................................3, 19, 23

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) .......................................................*passim*

935525_1

**Page**

## STATUTES, RULES AND REGULATIONS

2d Cir. Rule 32.1.1(a).............................................................................10

Federal Rules of Civil Procedure
    Rule 8 .....................................................................................13
    Rule 8(d)(2)......................................................................13, 14
    Rule 59(e) ...................................................................*passim*
    Rule 60(b) ..................................................................*passim*

15 U.S.C.
    §77k.............................................................................8, 14, 25
    §77l .......................................................................................25

17 C.F.R.
    §229.303...............................................................................10
    §229.503...............................................................................11
    §229.503(c) ..................................................................1, 11, 16

935525_1

## I.    INTRODUCTION

Plaintiffs challenge the dismissal of the Consolidated Amended Complaint ("CAC") and the denial of plaintiffs' post-judgment motion to file a proposed Third Amended Complaint ("TCAC") that addressed the bases for the dismissal order.

First, as to the dismissal of the CAC, Item 503, *see* 17 C.F.R. §229.503(c), and various accounting principles required Deutsche Bank ("DB"), under the facts alleged in the CAC, to disclose its €20 billion exposure to risky subprime/nonprime mortgage-related assets because objective factors, including indices that DB monitored, revealed that the value of DB's subprime/nonprime assets was threatened long before the first offering.  Opening Brief ("OB"):33-49.  Indeed, Item 503 was squarely implicated: it requires disclosure of "'the most significant factors that ***may*** adversely affect the issuer's business . . . or its future financial performance.'"    *Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 103 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 174 (2013).[1]

Defendants' response is based almost entirely upon *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011).[2]  But *Fait* involved statements of opinion regarding

---

[1]    ***Bold*** emphasis is added, and internal citations omitted, unless otherwise noted.

[2]    The Underwriters' Brief ("UWB") adopts the DB defendants' arguments. UWB:9-12.

935525_1

"[e]stimates" of the company's valuation of goodwill, *see id.* at 110, not a violation of a mandatory disclosure duty such as that imposed by Item 503. It is inapposite.

Moreover, extension of *Fait* to mandatory disclosure rules would undercut the purposes of those rules. Defendants' theory imputes to DB a subjective "opinion" that its assets were not at risk, and faults plaintiffs for supposedly not alleging that the invented opinion was not honestly held. But neither Item 503 nor the accounting principles condition disclosure on a company's subjective risk assessment. *Fait* cannot be extended to permit companies to avoid affirmative disclosure obligations and withhold objectively risky facts whenever a company subjectively believes there is no risk.[3]

Even if *Fait* does apply, the CAC satisfied it by alleging that defendants were aware of the risks posed by their undisclosed €20 billion exposure before the first offering. Joint Appendix ("JA") 54, JA60-JA61(CAC¶¶95, 113). The CAC's disclaimers of the obligation to prove fraud are not inconsistent with such allegations because *Fait* does not require scienter. *See* 655 F.3d at 112 n.5. Thus, it was error to

---

[3]     *Fait*'s viability may be affected by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, __ U.S. __, 134 S. Ct. 1490 (2014). Should *Fait* be overruled, the judgment must be reversed in its entirety.

- 2 -

dismiss the Item 503 and accounting claims, both of which alleged DB's failure to disclose its known risks.

Dismissing the CAC's Value-at-Risk ("VaR") claims as to the May 2008 offering was also error because, under *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 287 (S.D.N.Y. 2011), plaintiffs' allegations of routine VaR violations and DB's misleading statement that '"trading market risk outside of these units is immaterial,'" JA76(CAC¶162), sufficed.   Defendants argue *Lehman* requires allegations of a knowing misstatement, DB's Brief ("DBB"):39 n.30, but *Lehman* belies that contention.  *See* 799 F. Supp. 2d at 287.

Second, the district court erred in refusing to permit plaintiffs to file the TCAC pursuant to Fed. R. Civ. P. 59(e) and 60(b).  That complaint met any requirements *Fait* might impose:  it alleged that DB knew that the value of its RMBS and CDO assets were collapsing and profited from it, as DB's Executive Committee approved a $5 billion "short" position against the mortgage-backed asset market prior to the offerings. JA455-JA456, JA458-JA460(TCAC¶¶3, 10-15). Plaintiffs explained why the TCAC was viable under *Fait*, OB:55-65, and defendants have not argued otherwise, waiving any contrary argument.  *See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 n.10 (2d Cir. 2010).

- 3 -

The issue, then, is whether the district court erred in refusing – without explanation – to permit plaintiffs to file a viable amended complaint that addressed the *Fait*-based deficiencies that the district court identified in dismissing the CAC.  Taken together, *Foman v. Davis*, 371 U.S. 178 (1962), *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011), and *Freidus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013), stand for the proposition that, absent a strong basis for denying leave to amend, a court abuses its discretion when it refuses to allow a viable complaint to be filed. Defendants' cases do not say otherwise; even defendants' leading case acknowledges the propriety of "tak[ing] into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment."  *National Petrochemical Co. v. The M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("*NPC*") (citing *Foman*, 371 U.S. at 182).

Defendants, however, argue that this Court should ignore *Foman*, *Williams*, and *Barclays* in favor of their suggestion – cobbled together from a series of inapposite cases – that a complaint may be amended post-judgment ***only*** if the plaintiff has already been granted relief from judgment under Rules 59(e) and 60(b) on some other basis.  DBB:43-46.  Defendants' purported "mootness" rule is plainly wrong: *Foman*, *Williams*, and *Barclays* establish that plaintiffs' ability to file a viable amended complaint is itself a basis for relief under Rules 59(e) and 60(b).  *See Williams*, 659

- 4 -

F.3d at 213-14.  The unexplained refusal to permit plaintiffs to file the TCAC was error.  *See id.*

## II.    BECAUSE THE CAC PLEADED DEFENDANTS' KNOWLEDGE OF GRAVE RISK TO DB'S HOLDINGS BEFORE THE FIRST FOUR OFFERINGS AND MISLEADING VaR STATEMENTS, DISMISSING THE CAC WAS ERROR

### A.    Item 503

#### 1.    Defendants Violated Item 503 by Concealing Their Risky Subprime/Nonprime Assets

Item 503 provides that a registrant "must 'describe the most significant factors that may adversely affect the issuer's business . . . or its future financial performance.'" *Silverstrand*, 707 F.3d at 103.  Plaintiffs must "allege sufficient facts to infer that a registrant knew, as of the time of an offering, that (1) a risk factor existed; (2) the risk factor could adversely [a]ffect the registrant's present or future business expectations; and (3) the offering documents failed to disclose the risk factor." *Id*.

Plaintiffs pleaded these elements as to the three 2007 offerings and the February 2008 offering.  OB:38-42.  DB had €20 billion subprime/nonprime exposure to the U.S. real estate market, JA54(CAC¶96), comprising €3.46 billion in CDOs backed primarily by subprime/nonprime mortgages, including €1.1 billion in highly risky mezzanine CDOs; €9 billion of net counterparty exposure to monoline insurers; and €9.7 billion exposure directly through RMBS. JA54-JA56(CAC¶¶97-102).  It did not

- 5 -

935525_1

disclose this exposure prior to the 2007 offerings, JA51-JA52, JA60-JA61(CAC¶¶90, 113-114), or the February 2008 offering.  JA63-JA65(CAC¶¶124-129).

The Opening Brief explained that plaintiffs pleaded "sufficient facts to infer that [DB] knew, as of the time of [the] offering[s]," *see Silverstrand*, 707 F.3d at 103, that DB's €20 billion exposure to the U.S. real estate market constituted a "risk factor," JA54(CAC¶96), and described the facts DB was aware of as to each offering, OB:38-42, including the pronounced adverse trends in the real estate market that began the year before, in 2006, and continued into 2007.  JA57-JA58(CAC¶105).

The ABX and TABX indices, which tracked RMBS value and estimated the value of CDOs and other subprime assets, JA58-JA60(CAC¶¶106-112), and which defendants closely monitored, JA59(CAC¶108), demonstrated that the value of DB's subprime/nonprime-backed RMBS/CDOs and other subprime/nonprime-related assets had declined significantly prior to the May 2007 offering *and that defendants knew it*.  JA59-JA61(CAC¶¶111-113); *accord* JA54(CAC¶95(c)).  Thus, defendants violated Item 503 because they "knew, as of the time of [the May 2007] offering, that (1) a risk factor existed; [and] (2) [it] could adversely [a]ffect the registrant's present or future business expectations." *Silverstrand*, 707 F.3d at 103.  Of course, the situation grew even more dire after May 2007, JA59-JA60(CAC¶¶111-112), rendering DB's €20 billion

935525_1

exposure all the greater threat to its "present or future business expectations." *See Silverstrand*, 707 F.3d at 103.

Because plaintiffs rely upon the facts known ***as of the time of the four offerings***, defendants' repeated complaints that plaintiffs allege fraud-by-hindsight as to hard-to-value assets that is not based on "historic facts," DBB:18, 25-27, 30-31, are meritless. Defendants' related, and equally meritless, excuse – that it was difficult to predict the financial crisis, DBB:16-17, 31-32 – is beside the point: Item 503 did not require defendants to disclose the future extent of any financial collapse; it required them to disclose the ***existing risk*** inherent in DB's portfolio at the time of the offerings. They didn't need a crystal ball; the risky subprime/nonprime assets were on their balance sheet, and defendants "closely tracked" the indices that indicated those assets had lost value prior to the offerings. JA59-JA61(CAC¶¶108-113).

## 2. *Fait* Is Inapposite

Defendants ask this Court to extend greatly the reach of *Fait* to an Item 503 non-disclosure claim in which defendants offered no opinion. But *Fait* does not apply, and, even if it did, plaintiffs pleaded that DB was aware that its €20 billion exposure to subprime/nonprime assets was a risk factor that threatened its present and future business prospects prior to the offerings yet did not disclose it, which is all that even a robust application of *Fait* could require. *See Fait*, 655 F.3d at 110.

- 7 -

*Fait* does not apply to a registrant's affirmative duty to disclose risk under Item 503. The *Fait* plaintiffs contended that the registrant made "'negligently false and misleading' statements" regarding its valuation of goodwill arising from an acquisition and the adequacy of its "loan loss reserves." *Fait*, 655 F.3d at 108. Because the complaint did not allege that the registrant disbelieved its opinions of the goodwill asset's value, plaintiffs did "not adequately allege[] actionable misstatements or omissions regarding goodwill." *Id.* at 112.

Similarly, *Fait* rejected plaintiffs' challenge to the registrant's statements regarding its loan-loss reserves, *see id.* at 112-13, an issue that plaintiffs conceded was committed to "management's opinion or judgment." *Id.* at 113. Thus, the question in *Fait* was whether the company's statements – opinions regarding valuation and loan-loss reserves – constituted "'untrue statement[s] of a material fact'" or "'omitted to state a material fact . . . necessary to make the statements therein not misleading'" under §11(a). *Id.* at 109. *Fait* therefore does not apply here because it did not address "an omission in contravention of an affirmative legal disclosure obligation," *see In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010), which is the gravamen of an Item 503 claim. *See Silverstrand*, 707 F.3d at 102.[4]

---

[4]    Because an Item 503 claim involves a breach of an affirmative disclosure duty, not a false statement, *see Morgan Stanley*, 592 F.3d at 360, defendants'

The district court offered no analysis of Item 503; it, like defendants, addressed only plaintiffs' challenges to DB's valuation of its assets. Special Appendix ("SPA") 35 (Civil Docket ("CD") 70); DBB:24. But DB's holdings could pose a ***risk*** to DB's "present or future business expectations," *Silverstrand*, 707 F.3d at 103, implicating Item 503's disclosure duty, ***before*** write-downs became necessary. Thus, holding that plaintiffs' valuation claims challenging DB's failure timely to write-down its assets are subject to *Fait* says nothing about whether plaintiffs adequately pleaded their separate Item 503 claims attacking DB's failure to disclose the risk posed by those assets.

Moreover, defendants' *Fait* arguments effectively require the Court to attribute to defendants an invented subjective opinion that DB's subprime/nonprime exposure was somehow not a risk factor, and thus need not be disclosed under Item 503.[5] Defendants cite *Lehman*, 799 F. Supp. 2d 258, *In re Am. Int'l Group, 2008 Secs. Litig.*, No. 08Civ4772, 2013 U.S. Dist. LEXIS 60185 (S.D.N.Y. Apr. 26, 2013) ("*AIG*"), *Freidus v. ING Groep, N.V.*, 543 F. App'x 93 (2d Cir. 2013), and *Freeman*

---

acknowledgement that the district court "dismissed because Plaintiffs failed to allege falsity," DBB:18, effectively concedes error.

[5]     DBB:26-27. Attributing that made-up opinion to DB would be perverse: because DB ***knew*** its holdings were risky, it amassed a $5 billion "short" position against the mortgage-backed asset market. JA455-JA456, JA458-JA460(TCAC¶¶3, 10-15).

- 9 -

*Group v. Royal Bank of Scotland Group PLC*, 540 F. App'x 33 (2d Cir. 2013), as supposedly supporting that fanciful approach. DBB:25-27 & n.19; *but see* 2d Cir. Rule 32.1.1(a) (summary orders are non-precedential). Their non-binding cases do not address Item 503, or even Item 303's analogous provisions. *See* 17 C.F.R. §229.303.

Because plaintiffs allege that defendants violated Item 503's "affirmative legal disclosure obligation," *Morgan Stanley*, 592 F.3d at 360, and pleaded facts demonstrating that DB's €20 billion exposure was objectively risky before the offerings, defendants' request to extend *Fait* to Item 503 is tantamount to a request to construe Item 503 to allow companies to conceal objective risk factors based upon a company's subjective (perhaps even idiosyncratic) assessment of the risk. But Item 503 "is intended 'to provide investors with a clear and concise summary of the material risks to an investment in the issuer's securities.'" *Silverstrand*, 707 F.3d at 103 (quoting Securities Offering Reform, SEC Release No. 8501, 2004 WL 2610458, at *86 (Nov. 3, 2004)). Item 503 thus empowers investors to gauge their own risk appetites: "'The [SEC] promulgated this requirement because it assists investors in comprehending more fully whether the securities present an appropriate level of risk for them as an investment.'" *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 691 (S.D.N.Y. 2004). Defendants' approach turns that purpose on its head,

undercutting the ability of potential investors to gauge risk by allowing issuers to conceal objective risk factors whenever the issuer makes a subjective determination that the level of risk is consistent with its own risk appetite.

Indeed, *Silverstrand* sustained an Item 503 claim that alleged that defendants failed to disclose objectively risky facts without inquiring into the company's subjective beliefs. *See* 707 F.3d at 103-06. This Court similarly analyzed Item 303. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120-22 (2d Cir. 2012) (post-dating *Fait*); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011). Thus, no authority supports extension of *Fait*'s subjective analysis to Item 503.

Defendants offer only a secondary source's *ipse dixit* stating that Item 503's use of the phrase "where appropriate" in its "Risk Factors" section, *see* 17 C.F.R. §229.503(c), somehow makes disclosure optional. DBB:26. Item 503 and cases interpreting it refute that view. *See* 17 C.F.R. §229.503 ("The registrant ***must*** furnish this information in plain English."); *Silverstrand*, 707 F.3d at 103 (Item 503 "***requires*** that a prospectus include 'a discussion of the most significant factors that make the offering speculative or risky.'"); *Seow Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (Item 503 imposes "mandatory risk disclosures"). The SEC agrees: "Registration statements filed under the Securities Act ***must include***

935525_1

under the caption 'Risk Factors' a discussion of the factors that make the offering speculative or risky." SEC Release No. 7558 (July 29, 1998), http://www.sec.gov/rules/interp/33-7558.htm#body64 (last visited April 24, 2014); *accord* SEC Release No. 8501, 2004 WL 2610458, at \*86 (Nov. 3, 2004) (Item 503(c) describes a "required disclosure").

### 3.    Even if Applicable, *Fait* Does Not Support Dismissal

Even if applicable, *Fait* is satisfied. *See* OB:39-40. The CAC alleged that DB knew its €20 billion in mortgage-related holdings were "highly susceptible to the adverse events occurring in the U.S. subprime real estate market," and of the holdings' "increasing illiquidity," as well as the fact that "warning signs demonstrat[ed] the U.S. subprime crisis directly affected the collateral underlying DB's subprime-backed assets." JA54(CAC¶95). Similarly, plaintiffs alleged that the steep decline in the ABX/TABX indices beginning before the first 2007 offering "made it clear to defendants that the value of DB's subprime/nonprime-backed RMBS/CDOs and other subprime/nonprime-related assets had declined significantly prior to the May 2007 Offering." JA60(CAC¶113). These allegations must be accepted as true, *see Litwin*, 634 F.3d at 715, and satisfy even defendants' extreme reading of *Fait* by demonstrating that defendants knew the risks posed by their holdings but failed to disclose them. Defendants have no response.

- 12 -

935525_1

Moreover, the dramatically falling TABX/ABX indices, *see* JA58-JA61(CAC¶¶106-113), represent the "objective standard" lacking in *Fait*. *See* 655 F.3d at 110, 113; *see also In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 236 (S.D.N.Y. 2010) (objections to reliance upon the ABX and TABX "amount to factual disputes"). Similarly, the TABX/ABX allegations distinguish *City of Omaha v. CBS Corp.*, 679 F.3d 64 (2d Cir. 2012), where the plaintiffs offered "only conclusory statements, not factual allegations." *See id.* at 68.

### 4.    Plaintiffs Disclaimed Allegations of Fraud, Not *Fait*'s Knowledge Requirement

Although the CAC thus satisfies *Fait*, the district court asserted that plaintiffs "specifically state that none of their allegations are based on knowing misconduct," SPA36(CD70), and defendants' briefs are riddled with iterations of that misguided approach. The "disclaimer" argument is belied by the record and legally flawed.

First, the CAC alleges defendants knew of the risk posed by DB's toxic assets prior to the May 2007 offering and afterward. JA54, JA60-JA61(CAC¶¶95, 113). Even if those allegations were inconsistent with the disclaimers cited by defendants, plaintiffs "may plead two or more statements of a claim, even within the same count, regardless of consistency," *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994) (citing Fed. R. Civ. P. 8), and the CAC is therefore "sufficient" because it alleges the requisite knowledge. *See* Fed. R. Civ. P. 8(d)(2).

- 13 -

Second, the allegations relied upon by the district court and defendants are compatible with defendants' knowledge of the facts underlying plaintiffs' claims. Despite the district court's finding that plaintiffs "specifically state that none of their allegations are based on knowing misconduct," SPA36(CD70), the phrase "knowing misconduct" does not appear in the CAC; it states plaintiffs disavow "fraud or intentional or reckless misconduct." JA90, JA92(CAC¶¶189, 203). The district court and defendants thus give talismanic effect to non-existent language.

Plaintiffs' allegations disclaiming "fraud or intentional or reckless misconduct," *id.*, merely clarify that plaintiffs do not allege scienter, a term embracing intentional and reckless conduct. *See SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). Allegations that "[t]he claims asserted herein exclusively rely upon theories of strict liability and negligence," JA27(CAC¶1), and that "[t]hey do not sound in or arise from allegations of fraud," *id.*, simply invoke the fact that "Section 11 imposes strict liability on issuers and signatories, and negligence liability on underwriters." *See Panther Partners*, 681 F.3d at 120. That plaintiffs' claims "do not sound in or arise from allegations of fraud," JA27(CAC¶1), does not disclaim *Fait*'s knowledge requirement, because "the pleading required for beliefs and opinions 'does not amount to requirement of scienter.'" *Barclays*, 734 F.3d at 141 (quoting *Fait*, 655 F.3d at 112 n.5). Thus, the only reasonable reading of the CAC's "disclaimers" is that plaintiffs

- 14 -

disavow *scienter*, not *Fait*'s "knowledge" requirement, which is simply different. *See id.*

Even if the CAC explicitly stated plaintiffs disavowed "knowing misconduct," that would not "disclaim" *Fait*'s theory of liability. It would simply confirm that plaintiffs disavow scienter, which is what "'knowing misconduct'" connotes. *See Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 130 (2d Cir. 2000). Because *Fait* does not require scienter, *see Barclays*, 734 F.3d at 141, disavowing "knowing misconduct" does not preclude liability under *Fait*.

### 5. Defendants' Generic Disclosures Do Not Satisfy Item 503

The disclosures made before the 2007 offerings and the February 2008 offering did not reveal DB's €20 billion subprime/nonprime exposure. Defendants nonetheless argue that because they made different disclosures – primarily that they could suffer losses because they held mortgage-backed securities in a declining residential mortgage market, DBB:34-35 – they were permitted to conceal the substantial threat posed by their enormous *subprime/nonprime* exposure, even though subprime/nonprime assets undeniably present a greater risk of default than do prime mortgages.

Defendants' arguments simply ignore Item 503, but nothing in that provision suggests that the generalized disclosures urged by defendants – disclosures that did

- 15 -

not reveal DB's €20 billion subprime/nonprime exposure – somehow excused DB from its duty to disclose the substantial risk posed by those assets. Rather, Item 503 directs that the registrant "[s]et forth **each risk factor** under a subcaption that **adequately describes the risk**," 17 C.F.R. §229.503(c), and "[e]xplain how the risk affects the issuer or the securities being offered." *Id.* Thus, not only must each risk factor be identified, it must also be adequately explained. *See id.* DB did neither as to the risk posed by its subprime/nonprime assets. Defendants' disclosure of ***some*** risk, but not the grave threat posed by its subprime/nonprime holdings, does not satisfy Item 503's obligation to disclose "***each*** risk factor." *See id.*

Rather than address Item 503's affirmative disclosure obligation, defendants contend that concealing their subprime/nonprime exposure did not render their generic disclosures misleading. DBB:32-35. Defendants' arguments are doubly flawed.

First, defendants are liable because they violated an "affirmative legal disclosure obligation," *Morgan Stanley*, 592 F.3d at 360, and that theory of liability does not turn on whether defendants' omission rendered the offering materials misleading; it requires only a violation of a disclosure obligation, here Item 503. Defendants offer no arguments based on that provision.

Second, even if defendants had properly framed the issue, the offering materials certainly were misleading due to their omissions, and defendants' authorities do not

- 16 -

935525_1

suggest otherwise.  Because DB did not reveal its €20 billion subprime/nonprime

exposure prior to any of the first four offerings, cases cited by defendants in which the

very risk challenged by the plaintiffs had been revealed in the offering materials are

inapposite.  *See* DB:32 (citing *In re ProShares Trust Secs. Litig.*, 728 F.3d 96, 102 (2d

Cir. 2013), and *Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 7 (2d Cir. 1996)).[6]

DB's investors simply had no way of knowing of DB's enormous exposure to risky

subprime/nonprime assets.  *See Panther Partners*, 681 F.3d at 122 (liability under

Item 303 based upon failure "to inform the investing public of the particular,

factually-based uncertainties of which [the company] was aware").

Defendants' misleading-omission authorities, DB:33-34, are similarly far afield.

In *In re Royal Bank of Scot. Group PLC Sec. Litig.*, No. 09Civ.300(DAB), 2012 U.S.

Dist. LEXIS 126220, at *25-*26 (S.D.N.Y. Sept. 4, 2012), plaintiffs failed to allege

"contemporaneous facts" demonstrating that the undisclosed subprime assets

"presented credit risks would have been deemed material information by investors."

Here, plaintiffs did exactly that, alleging that DB's vast subprime holdings constituted

a risk factor prior to the four offerings.  JA51-JA52, JA54, JA58-JA61(CAC¶¶90, 95,

106-113).

---

[6]    *ProShares*, 728 F.3d at 102, is also irrelevant because it found the omission
immaterial.  Defendants have not argued materiality here.  SPA19(CD59).

935525_1

Defendants also cite *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013), as holding that "'the only information that was needed to make [the issuer's] comment about the Alt-A mortgage market not misleading was that [it] actually had direct exposure to that market.'" DB:33 (quoting *Slater*, 719 F.3d at 1201). Defendants omit the fact that the issuer's "comment" was a statement that could have implied that the company "had no ***direct*** exposure to the Alt-A market." *Slater*, 719 F.3d at 1200 (emphasis in original). The "implication" of the *Slater* offering materials was cured because the company admitted direct exposure. *See id.* at 1201. *Slater* thus addressed only what was necessary to cure the potentially false "implication" in the offering materials ***in that case***; it says nothing about whether Item 503 required a more fulsome disclosure here.

Referring to the admission of "'direct exposure'" to the Alt-A market in *Slater*, defendants claim "Deutsche Bank's disclosures made that clear." DB:33-34. Nonsense. DB did not disclose its €20 billion subprime/nonprime exposure before the 2007 and February 2008 offerings; its disclosures did not even suggest that massive exposure. JA51-JA52, JA60-JA61, JA63-JA65(CAC¶¶90, 113-114, 124-129).

Indeed, *Barclays* demonstrates that defendants' omissions did render the offering materials misleading. *Barclays* rejected the lower court's conclusion that "'defendants had no duty to provide an itemized breakdown of [Barclays's] mortgage-

- 18 -

related assets,'" 734 F.3d at 140 n.3, and held that "[i]n a quickly deteriorating credit market, we believe the particulars about a firm's exposure to that market could assume a level of importance, and hence materiality, that may not have been the case in less economically stressful times," *id.* at 140, even though the company had previously disclosed "a £1.5 billion writedown on its CDO and subprime assets." *Id.* at 136. Indeed, defendants have not argued that DB's €20 billion subprime/nonprime exposure was immaterial. SPA19(CD59). Defendants' concealment of "the particulars" of its €20 billion subprime/nonprime exposure was misleading under *Barclays*.

### B.    The Accounting Principles

DB's failure to disclose its €20 billion subprime/nonprime exposure in a collapsing U.S. housing and mortgage market violated a series of affirmative disclosure duties imposed under GAAP and IFRS.[7] Defendants were obligated to disclose that exposure (1) under SFAS No.107 as a "'significant concentration[] of credit risk,'" (2) because a loss was "reasonably possible" under SFAS No.5, and (3) under the similar provisions of IFRS 7. OB:44-49. Defendants have responded with the same *Fait*-based arguments advanced as to Item 503, but their arguments as

---

[7]    OB:42-49. Defendants question whether GAAP applies, DBB:29 & n.25, but do not argue the issue, thus waiving any argument. *See T.Co Metals*, 592 F.3d at 346 n.10. In any event, defendants fell short of both GAAP and IFRS.

to the accounting provisions' disclosure obligations fail for the same reasons. *See supra* at 5-18. Moreover, plaintiffs' accounting claims raise issues of fact that are not properly resolved at the motion-to-dismiss stage. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 (3d Cir. 1997).

While defendants raise few arguments specific to the accounting issues, they argue *Fait* applies to SFAS No. 107 because the question whether a "'concentration of credit risk is "significant" . . . hinges on management's judgment.'" DBB:26 (quoting *AIG*, 2013 U.S. Dist. LEXIS 60185, at *17). But *Citigroup*, 753 F. Supp. 2d 206, anticipated *Fait*'s holding, *see id.* at 247, yet did not apply it in concluding that the failure to disclose "exposure to subprime mortgages" violated GAAP. *See id.* at 235.

*AIG* is unpersuasive. It cites only *Lehman*, *see* 2013 U.S. Dist. LEXIS 60185, at *17, to hold that whether a credit risk is "significant" is committed to management's judgment. *Lehman*'s analysis is demonstrably wrong: *Lehman* relied upon SOP 94-6-1 for its interpretation of the term "significant," *see* 799 F. Supp. 2d at 291 n.223, but SOP 94-6-1 does not address that term. OB:46-47. Defendants also cite *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010) ("*CIBC*"), DBB:28-29, but its scienter discussion is irrelevant.

- 20 -

### C.    VaR

As to the May 2008 offering, DB's 2007 20-F stated that DB's equities trading VaR  ranged between $43.5 million and $90.5 million during 2007.[8]  DB provided additional assurance to investors, stating that its "'trading market risk outside of these units is immaterial.'"  JA76(CAC¶162).  DB's 2008 equities trading losses were almost 700% above the high end of its reported VaR range ($90.5 million).  *Id.*  Given that extraordinary discrepancy, the district court's initial holding that "[t]hese factual allegations of trading vastly in excess of stated VaR limits are sufficient to state a claim," SPA23(CD59) (citing *Lehman*, 799 F. Supp. 2d at 286-87), was correct.  *Lehman* held that the "routine" nature of the violations in that case suggested that defendants' VaR statements were misleading, *see id.* at 286-87, and that conclusion is equally applicable here because DB's losses of 700% over its stated VaR maximum were both strongly suggestive of routine VaR violations and inconsistent with DB's representation that its "'trading market risk outside of these units is immaterial.'"  JA76(CAC¶162).

Defendants' response flatly refused to address either of those facts; while they repeatedly note that DB stated that its VaR maximum is not the maximum it might

---

[8]    JA76(CAC¶162).  Defendants falsely claim plaintiffs described DB's VaR as "simple."  DBB:35.  Misleading, yes.  Simple, no.

- 21 -

lose, DBB:37-38, they offer no argument why exceeding that high end by 700% does not suggest that it routinely disregarded the VaR range. Nor do defendants explain how the statement that DB's "'trading market risk outside of these units is immaterial'" was not misleading. JA76(CAC¶162).

Rather, they offer yet another *Fait* argument.[9] Defendants claim that *Lehman* is distinguishable because it involved "***knowing***" VaR violations, DBB:39 n.30 – thus satisfying *Fait* – but defendants misstate *Lehman*'s analysis. *Lehman* relies upon "factual allegations of routine breaches of VaR limits," *see* 799 F. Supp. 2d at 287, accompanied by misleading statements, just as plaintiffs do here. *Lehman* did not apply *Fait's* knowledge requirement.[10]

## III. THE DISTRICT COURT ERRED UNDER *FOMAN*, *WILLIAMS*, AND *BARCLAYS* IN DENYING, WITHOUT EXPLANATION, PLAINTIFFS' POST-JUDGMENT MOTION TO FILE A COMPLAINT THAT SATISFIED *FAIT*

### A. *Foman*, *Williams*, and *Barclays* Require Reversal

Plaintiffs' post-judgment reconsideration motion submitted the proposed TCAC, which addressed the grounds of the district court's dismissal order. It alleged,

---

[9]    DBB:38-39. Defendants' reliance on *CIBC* is misplaced; it addressed scienter. *See* 694 F. Supp. 2d at 301.

[10]    *See id.* Defendants cite *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10Civ.440(LAK)(HBP), 2013 U.S. Dist. LEXIS 21869, at *51-*52 (S.D.N.Y. Feb. 15, 2013), *see* DBB:38-39, but it does not address *Lehman*'s VaR analysis.

- 22 -

*inter alia*, that DB knew before the offerings that the value of its RMBS and CDO assets were collapsing, as evidenced by its $5 billion "short" position against the mortgage-backed asset market.  JA455-JA456, JA458-JA460(TCAC¶¶3, 10-15).  The TCAC plainly satisfies *Fait*, OB:55-65, and defendants' briefs do not dispute that conclusion, thus waiving any argument that the TCAC is deficient.  *See T.Co Metals*, 592 F.3d at 346 n.10.  The TCAC did not include any of the disclaimers that the district court relied upon (albeit erroneously) to conclude that plaintiffs could not satisfy *Fait*, and, once filed, the TCAC would supersede the CAC.  *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998).

*Foman*, *Williams*, and *Barclays* all reversed refusals to permit plaintiffs to file viable complaints post-judgment.  In *Foman*, the lower court dismissed plaintiff's oral contract claim and entered judgment, after which plaintiff sought to file a *quantum meruit* claim which "would have done no more than state an alternative theory for recovery."[11] *Foman* treated the request as a Rule 59(e) motion and held that denying leave to file the amended complaint was error, finding that a court abuses its discretion when it denies leave to amend "without any justifying reason appearing for the denial."  371 U.S. at 181-82.

---

[11]    371 U.S. at 179-82.  Defendants object to the TCAC's Item 303 claims, DBB:30 n.27, but *Foman* allows "alternative theor[ies] for recovery."  *See* 371 U.S. at 182.

*Williams* followed *Foman*, also reversing the denial of a post-judgment motion

under Rules 59(e) and 60(b) to file an amended complaint.  *See* 659 F.3d at 212-14.

The district court denied leave to amend because the facts plaintiff offered had been

known for years and plaintiff did "'not explain why she should be granted leave to

replead at this stage when she failed to request an opportunity to replead in the first

instance.'"  *Id.* at 212.  *Williams* flatly rejected those justifications:

> The district court apparently believed that a motion for leave to replead
> is not timely unless made "in the first instance."  The court did not
> explain precisely what it meant by "in the first instance."  In the
> circumstances of this case, however, it can only have meant one of two
> things: that the plaintiff was under obligation to seek leave to replead
> either immediately upon answering the motion to dismiss the complaint
> (without yet knowing whether the court will grant the motion, or, if so,
> on what ground), or immediately upon receipt of the court's ruling
> granting the motion and prior to the entry of judgment thereupon.
> ***Regardless which of the two the court had in mind, <u>Foman</u> makes
> unmistakably clear there is no such rule***. The plaintiff in *Foman* did
> not seek leave to replead either together with her response to the motion
> to dismiss, or indeed prior to the district court's entry of judgment.

*Id.* at 214.  *Williams* therefore reversed and remanded, directing the district court to

"address whether the proposed amendments would be futile."  *Id.*

Finally, in *Barclays* the district court also dismissed for failure to allege that

valuations were subjectively false.  Plaintiffs moved for reconsideration, and

proposed an amended complaint alleging that defendant "'***knowingly*** failed to

properly write down its exposure.'"  *Barclays*, 734 F.3d at 140 (emphasis in original).

- 24 -

935525_1

The district court refused to allow the amendment, reasoning "that claims that a defendant disbelieved its own subjective opinions were actually allegations of fraud, and therefore could not be brought pursuant to §§11 and 12(a)(2)." *Id.* at 141. Following *Fait*, *Barclays* held "the pleading required for beliefs and opinions 'does not amount to requirement of scienter,'" *id.* (quoting *Fait*, 655 F.3d at 112 n.5), and that such allegations did not constitute fraud, and remanded "so that Lead Plaintiffs may file an amended complaint." *Id.* at 142.

Thus, in all three cases plaintiffs submitted post-judgment amended complaints that addressed the substance of the dismissals, and the reviewing courts held it was error not to permit the filing of the complaint or, at least as in *Williams*, remanded for a determination whether the allegations were viable. That is exactly what occurred here: plaintiffs filed a post-judgment motion under Rules 59(e) and 60(b), submitting the proposed TCAC which addressed the bases of the dismissal, and the TCAC's viability is unchallenged on this appeal. Refusing to permit plaintiffs to file it was error under *Foman*, *Williams*, and *Barclays*. Defendants simply ignore those cases.

The district court's order denying plaintiffs' motion never mentions the proposed TCAC, nor does it address *Foman*. SPA43-49(CD78). That alone requires reversal: it is an abuse of discretion to deny leave to amend "without any justifying reason appearing for the denial." *Foman*, 371 U.S. at 182.

- 25 -

The order does say that *Fait* was not then new law – it was decided nearly a year earlier although defendants' motion for reconsideration citing *Fait* was pending for nearly that entire time, SPA46-47(CD78) – and that plaintiffs' "proposed evidence was available prior to the filing of the Clerk's Judgment on August 17, 2012." SPA47-48(CD78). Defendants urge these grounds as bases for affirmance, DBB:39-40, 45-46, but those are the same reasons the district court offered in *Williams*, *see* 659 F.3d at 212, and this Court flatly rejected them. *See id.* at 214 (holding that "*Foman* makes unmistakably clear there is no such rule"). Indeed, *Williams*'s analysis is particularly apt here as it explains that a plaintiff need not attempt to anticipate the district court's resolution of the defendants' motion to dismiss, *see id.*, which certainly makes sense in the case of *Fait*, a decision that came after the district court's original denial of the motion to dismiss and that ultimately led to a Circuit conflict and current review by the Supreme Court.

### B. The District Court's Dismissal of the CAC with Prejudice Was Error

While *Williams* is thus dispositive, defendants nonetheless claim that the district court correctly dismissed the CAC without leave to amend and that somehow precludes relief under Rules 59(e) and 60(b). First, defendants contend that the district court did not err in dismissing with prejudice because plaintiffs supposedly disclaimed liability based upon "intentional, knowing or reckless misconduct."

- 26 -

935525_1

DB:40.  Defendants' "disclaimer" argument is meritless for all the reasons previously discussed.  *See supra* at 13-15.

Moreover, the district court could not have found that plaintiffs could not plead knowledge – because the CAC actually did so.  JA54, JA60-JA61(CAC¶¶95, 113). "'Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.'"  *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010); *see also Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("a dismissal ordinarily should be accompanied by leave to file an amended complaint").  Based upon the CAC's knowledge allegations, it was clear that plaintiffs ***could*** plead a *Fait*-compliant complaint if necessary (which they did in the TCAC).

Relatedly, defendants also ascribe significance to plaintiffs' filing of a second amended complaint ("SCAC") during the pendency of defendants' motion for reconsideration.  DBB:40-41, 46 n.36.  But the district court directed plaintiffs to do so within 30 days of its August 2011 order.  SPA30(CD59).  Plaintiffs complied with the district court's order, JA337-JA403(CD65), because defendants' motion for reconsideration had not yet been decided.  SPA31-36(CD70).  *Williams*'s rationale is squarely implicated: plaintiffs cannot be expected to have added allegations to the SCAC adopting defendants' *Fait* theories "without yet knowing whether the court

935525_1

will grant the motion, or, if so, on what ground." *See* 659 F.3d at 214. The fact that plaintiffs filed the SCAC without adding *Fait* allegations is thus without significance under *Williams*, and certainly does not distinguish *Barclays* as suggested by the Underwriters. UWB:12 n.6.

### C. Defendants' Proposed "Mootness" Rule Is Not Supported by the Cases They Cite, and Conflicts with *Foman*, *Williams*, and *Barclays*

Regardless of whether the district court properly dismissed the CAC without leave to amend, *Foman*, *Williams*, and *Barclays* demonstrate that it was error to refuse to allow plaintiffs to file the TCAC pursuant to their motion under Rules 59(e) and 60(b). The viability of the TCAC has not been disputed and it does not contain the disclaimers upon which defendants rely. Rather than address *Foman*, *Williams*, and *Barclays*, defendants ask this Court to ignore them, and hold that a post-judgment motion to amend may only be granted if the court grants relief on a ground other than the request to amend. DB:43. Otherwise, a post-judgment request to amend pursuant to Rules 59(e) and 60(b) is supposedly "moot." DB:43-46. Defendants' proposed rule effectively overrules *Foman*, *Williams*, and *Barclays*, which hold that a viable amended complaint *is itself a basis for granting relief under Rules 59(e) and 60(b)*.

- 28 -

Defendants cite factually inapposite cases in an effort to manufacture a rule
that a motion to file an amended complaint requires some sort of separate ground for
relief other than the requested amendment.  DB:43-46.  The effort fails.  Defendants
cite *NPC*, which states that "'once judgment is entered the filing of an amended
complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R.
Civ. P. 59(e) or 60(b),'" 930 F.2d at 244 (quoting *Cooper v. Shumway*, 780 F.2d 27,
29 (10th Cir. 1985)), but that quotation merely establishes the necessity, after
judgment is entered, to move under Rule 59(e) or 60(b).  The plaintiff in *Cooper* – the
case *NPC* cited – failed to do so.  *See Cooper*, 780 F.2d at 28.  But the necessity for
such a motion is not in dispute: plaintiffs here sought relief under those very rules.
JA427(CD73).

Defendants also rely upon *NPC*'s statement that "unless there is a valid basis to
vacate the previously entered judgment, it would be contradictory to entertain a
motion to amend the complaint."   930 F.2d at 245 (DBB:45).   *NPC* was not
addressing the situation here – and in *Foman*, *Williams*, and *Barclays* – where
plaintiffs seek to file a viable amended complaint that addresses the bases for the
dismissal order.  Far from it: NPC, in its complaint, had admitted that it employed an
agent in an effort to ship chemicals from the United States to Iran despite the United
States embargo.  *See id.* at 244.  That admission was fatal to NPC's claims, *see id.* at

- 29 -

243-44, and the district court entered summary judgment against it. *See id.* at 244. NPC's motion to vacate judgment under Rule 60(b) did not seek to file a new complaint but rather "belatedly seeks to amend its complaint to withdraw its admission therein of an agency that is abundantly supported in the record." *Id.* at 245. *NPC* recognized that *Foman* supported "tak[ing] into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," *id.* (citing *Foman*, 371 U.S. at 182), but the "nature of the proposed amendment" – an effort to escape the consequences of plaintiff's judicial admission of the fact of an agency relationship that was part of a "course of conduct designed to circumvent the embargo imposed by the United States," *id.* at 244 – hardly supported allowing post-judgment amendment. *See id.* at 245; *see also State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (failure to submit a proposed amended complaint was indicative of a lack of diligence and good faith).

Defendants' citation to *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *NPC*, 930 F.2d at 244) (DBB:43), is similarly unavailing. There, plaintiff proposed his amendment "post-judgment in a case that had been trial-ready, and pleads a new scenario that would prevent disposition of the case until either further motion practice or a trial – and any trial or motion practice would likely be

delayed pending discovery on open questions." *Id.* at 192. Those considerations are not present here.

Defendants also cite dicta from *Janese v. Fay*, 692 F.3d 221, 225 (2d Cir. 2012) (DBB:45). *Janese*'s procedural history section states that "[f]ollowing entry of judgment, the Plaintiffs moved for reconsideration of the District Court's order and for leave to amend the complaint to allege fraud with greater particularity. The District Court denied the motion for reconsideration, rendering the motion to amend moot." *Id.* (citing *NPC*, 930 F.2d at 244). That recounting of the procedural history does not reveal the district court's reasoning and, ultimately *Janese*'s abbreviated later discussion of the post-judgment issue was dicta because this Court (1) affirmed the dismissal of one group of counts on grounds unrelated to the subject of the proposed amendment, fraud, *see id.* at 227, and (2) reversed the remaining counts on a judicial notice issue that was not related to fraud (which *Janese* found was adequately pleaded at any rate). *See id.* at 228-29 & n.7. In fact, this Court noted that plaintiffs could seek to amend the reversed counts after remand in any event. *See id.* at 229. In short, the dicta in *Janese*, and its unexplained "mootness" comment – based solely upon the inapposite authority of *NPC* – is no basis for disregarding the plain import of *Foman*, *Williams*, and *Barclays*: the denial of leave to amend to file the TCAC was error.

- 31 -

## IV.    CONCLUSION

The district court's dismissal of the CAC and its refusal to file the TCAC should be reversed.

DATED:  April 24, 2014                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                           ANDREW J. BROWN
                                           STEVEN F. HUBACHEK
                                           ERIC I. NIEHAUS
                                           LUCAS F. OLTS
                                           CHRISTOPHER D. STEWART


                                                 STEVEN F. HUBACHEK
                                                 STEVEN F. HUBACHEK

                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101
                                           Telephone:  619/231-1058

                                           LAW OFFICES BERNARD M.
                                            GROSS, P.C.
                                           DEBORAH R. GROSS
                                           Wanamaker Bldg., Suite 450
                                           100 Penn Square East
                                           Philadelphia, PA  19107
                                           Telephone:  215/561-3600

                                           Counsel for Plaintiffs-Appellants

- 32 -

935525_1

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that Plaintiffs-Appellants' Reply Brief uses a proportionally spaced Times New Roman typeface, 14–point, and that the text of the brief comprises 6,997 words according to the word count provided by Microsoft Word 2010 word processing software.

s/ STEVEN F. HUBACHEK

_____

STEVEN F. HUBACHEK

935525_1

<u>DECLARATION OF SERVICE</u>

I HEREBY CERTIFY under penalty of perjury that, on April 24, 2014, I am causing a true and correct copy of the foregoing to be filed with the Clerk of the Court for the Second Circuit Court of Appeals by using the appellate CM/ECF.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Executed on April 24, 2014, at San Diego, California.

s/ STEVEN F. HUBACHEK
STEVEN F. HUBACHEK